## DISTRICT OF COLUMBIA *v.* HUMPHRIES.

PRACTICE; TRIAL; JUDGMENT; VERDICT.

A sealed verdict rendered by eleven jurors, who in response to questions stated that the twelfth juror was sick, but had signed the verdict, is an absolute nullity, and a judgment entered upon it is void and can be so declared in any proceeding to impeach it, direct or collateral, whether taken after the expiration of the term at which it was entered or not.

No. 742.   Submitted December 10, 1897.   Decided January 5, 1898.

HEARING on an appeal by the defendant from an order overruling a motion to vacate a judgment alleged to have been entered upon a void verdict.   *Reversed.*

The facts are sufficiently stated in the opinion.

*Mr. S. T. Thomas*, Attorney for the District of Columbia, and *Mr. A. B. Duvall*, Assistant Attorney, for the appellant:

1. The judgment complained of was irregular and void. Relief against an irregular or voidable judgment under ancient practice was by writ of *coram nobis*. In modern practice a motion is substituted for this writ. 12 Am. & Eng. Encyc. L. 132; *Phillips* v. *Negley*, 117 U. S. 665; *Pickett's Heirs* v. *Legerwood*, 7 Pet. 144; Poe's Practice, 395. This court, in its opinion dismissing the prior appeal, pronounced the verdict on which the judgment in question is based "a mere nullity and of no effect whatever . . . a void verdict." 11 App. D. C. 68.

2. The court below exceeded its jurisdiction in entering the judgment, and the judgment is void. In the case of *United States* v. *Walker*, 109 U. S. 258, which was an action on an administrator's bond, it was held that an order passed by the Supreme Court of the District of Columbia directing an administratrix to pay over the fund to her successor was void, because that court exceeded its jurisdiction. *Bigelow* v. *Forrest*, 9 Wall. 339; see, also, *Ex parte Lange*, 18 Wall. 163–176; *Cooper* v. *Reynolds*, 10 Wall. 316.

3. The constitutional right of trial by jury was denied the defendant in this case. The Seventh Amendment to the Constitution provides that "in suits at common law where the value in controversy shall exceed $20, the right of trial by jury shall be preserved." In the Territories and the District of Columbia this involves unanimity in the verdict rendered by the whole number of jurors. By any other verdict a constitutional right is denied. *Am. Pub. Co.* v. *Fisher*, 166 U. S. 464; *Springfield* v. *Thomas*, Id. 707.

4. The judgment of the court below was not according to the practice of the court and may be set aside at any time.

A judgment may be set aside by a court after the term where it was not entered in accordance with the practice

of the court. *Bailey* v. *Sloan,* 65 Cal. 387 ; *Ames* v. *Brinsden,* 25 Kan. 520 ; *Fenton* v. *Garlick,* 6 Johns. N. Y. 288; *Dick* v. *McLaurin,* 63 N. C. 185; *Merrick* v. *Baltimore,* 43 Md. 299; *Folger* v. *Columbiana Ins.,* 99 Mass. 267 ; *Fithian* v. *Monks,* 43 Mo. 502 ; *Seamster* v. *Blockstock,* 83 Va. 232 ; *Anthony* v. *Kasey,* 83 Va. 338 ; *Windsor* v. *McVeigh,* 93 U. S. 283 ; *Pennoyer* v. *Neff,* 95 U. S. 733.

Where a court has jurisdiction, it has a right to decide every question which occurs in the cause ; and whether its decision be correct or otherwise, its judgment, until reversed, is regarded as binding in every other court; but if it acts without authority, its judgment and orders are regarded as nullities. They are not voidable, but simply void. *Elliott* v. *Peirsol,* 1 Pet. 340 ; *Wilcox* v. *Jackson,* 13 Pet. 511 ; *Hickey* v. *Stewart,* 3 How. 762 ; *Thompson* v. *Whitman,* 18 Wall. 467; *In re Sawyer,* 124 U. S. 220. See, also, *Tenney* v. *Taylor,* 1 App. D. C. 227.

The difference between void and voidable judgments is that the former can always be assailed in any proceeding, and the latter in a direct proceeding only.

An irregular judgment may be set aside at a subsequent term. *Union Bank* v. *Crittenden,* 2 Cranch C. C. 283; *Ault* v. *Elliott,* Id. 372; *Jones* v. *Kemper,* Id. 535; *Hyer* v. *Hyatt,* Id. 633; *Newton* v. *Weaver,* Id. 685.

*Mr. Arthur A. Birney* and *Mr. Woodbury Wheeler* for the appellee:

1. After the close of the term errors in a final judgment other than mere clerical misprisions can be corrected only by an appellate court on writ of error or appeal. The trial court has then lost the right to vacate the recovery under any proceedings. The question relates to the power of the courts, and not to the mode of procedure. *Bronson* v. *Schulten,* 104 U. S. 410; *Phillips* v. *Negley,* 117 U. S. 665. The claim of the Maryland courts, of common law power incident to courts of record to set aside judgments after the term,

is negatived in this jurisdiction.  *Phillips* v. *Negley, supra.*

2.  However erroneous the verdict, the judgment is not void.  To render a judgment *in personam* void the court must (*a*) have been without jurisdiction of the subject-matter of the action, or (*b*) without jurisdiction over the person of defendant, or (*c*) the judgment must be in excess of jurisdiction.  *Cooper* v. *Reynolds,* 10 Wall. 308 ; Freeman on Judgments, Sec. 116 ; *Allen* v. *Huntington,* 16 Am. Dec. (Verm.) 702.  The error here complained of was committed by the trial judge while in the exercise of jurisdiction ; the very question here presented was ruled upon and determined by him ; in rendering such judgment he was acting within his jurisdiction, and his error could be taken advantage of only on appeal.  *In re Edward Eckart,* 166 U. S. 481 ; *Ex parte Belt,* 159 U. S. 95 ; *Ex parte Coy,* 127 U. S. 731 ; *Ex parte Bigelow,* 113 U. S. 328.  The Eckart case is of controlling force.  The petitioner was convicted of murder under a statute dividing that crime into three degrees, with varying punishments.  It was the duty of the jury to find the degree, and this they did not do ; but notwithstanding this, the court accepted the erroneous verdict and sentenced the petitioner as for the first degree.  The conviction was declared erroneous, but the judgment was not void.

Mr. Justice MORRIS delivered the opinion of the Court:

This is the second appeal in this case.  Most of the facts out of which arises the question now presented for our determination, are stated in the opinion of this court rendered upon the former appeal, and need not here be restated.

This suit is one to recover against the District of Columbia for personal injuries alleged to have been sustained in consequence of the neglect of the officers and agents of the District.  There was an issue of fact joined, and a jury was summoned to try that issue.  A sealed verdict was authorized.  Under the circumstances stated in our former opinion, the jury was polled at the time of the rendition of the ver-

dict, and only eleven jurors answered. Yet the court, over the objection of the defendant, received the verdict, which was in favor of the plaintiff for $7,000, and caused it to be recorded as the verdict of the eleven jurors, the eleven, however, all stating, in answer to questions by the court, that the twelfth juror, who was detained away by illness, had also signed the sealed verdict. A motion in arrest of judgment was interposed by the defendant, upon the one ground, among others, that there was no verdict upon which judgment could be entered. The motion was overruled, and judgment was entered against the defendant for the sum of $7,000.

Subsequently, and at a subsequent term of the court, the plaintiff asked for a correction of the record, so as that the record should show the rendition of a sealed verdict, and the entry of the sealed verdict as the verdict of the jury, without any reference to the fact that it had been delivered by only eleven jurors, or rather that only eleven jurors were present at the time of its delivery by the physician of the absent juror. This motion, also, over the objection of the defendant, the court allowed, and ordered the record to stand corrected, as requested in the motion, but no new judgment was then or afterwards rendered upon this corrected verdict or corrected record of the verdict.

In this condition of things, an appeal, which had been taken to this court immediately upon the rendition of the judgment, but which was not perfected until after the lapse of the time within which it was required to be perfected, came to us; and we were compelled, by reason of that failure, to dismiss it at the hearing. The case, however, having been argued before us on the merits, we deemed it proper, in our opinion, in the case to discuss the question of the validity of the verdict; and we were compelled to regard that verdict as an utter nullity.

A few days after the dismissal of the appeal the defendant moved in the court below for a rescission of the judgment that had been rendered by that court, on the ground that

there was no verdict to support it, and that it had been irregularly entered. The term of the court at which it had been rendered had then passed; and even the next term thereafter had come to an end. It was claimed that it was beyond the power of the court at that time to vacate the judgment or to disturb it any manner. The argument was that the judgment was not void, but at the most voidable or irregular; and that therefore it could not be attacked in any collateral proceeding, which the present motion was regarded as being. To this view the court below acceded, overruled the motion, and refused to vacate the judgment. From this decision the present appeal is prosecuted by the defendant.

We may state, as a preliminary matter, that no reliance seems to be placed by any one upon the curative or corrective action taken by the court below, after the rendition of the judgment, for the spreading of the sealed verdict upon the record. This was powerless to affect the verdict or judgment already rendered ; and it was not followed by any new judgment. It has not entered into the consideration of the question by either side.

In our former opinion in this case we pronounced the verdict that was rendered an absolute nullity. The broad question now presented is, therefore, whether a valid judgment can be based upon a void verdict. And to the question so stated it is not possible that there can be more than one answer. No superstructure can stand when the foundation has been torn away. There can be no valid judgment when an essential prerequisite to the rendition of judgment is wanting. Under our system of jurisprudence, a contested issue of fact at common law, in the absence of statutory provision authorizing or allowing a different mode and the consent of parties to have recourse thereto, can only be determined by a trial before a jury of twelve men, and the unanimous verdict of those twelve men upon the issue. Such a trial and verdict are essential prerequisites to the

rendition of any judgment upon such issue of fact.  They are the due process of law necessary to justify the existence of any such judgment, and without which the court is without jurisdiction to pronounce judgment.

Due process of law, said Mr. Justice Field, speaking for the Supreme Court of the United States, in the noted case of *Pennoyer* v. *Neff*, 95 U. S. 733, means "a course of legal proceedings, according to those rules and principles which have been established in our system of jurisprudence for the protection and enforcement of private rights."  And among those rules and principles there is none more distinctly fixed than the constitutional right of the trial of issues of fact at common law by a jury.  That due process of law was not observed in this case, for, while there was a trial before a jury, that jury rendered no verdict, and the trial was abortive.  Apart, therefore, from any technical considerations, it is very plain that the judgment entered in this case, being based merely upon a void verdict, must necessarily fall with that verdict.  And the premises being granted, this necessarily must have been the result, if the defendant had directly and in due time appealed from the judgment.

But the argument of the appellee now is, that the judgment is only voidable, and not void; and that its validity can not be assailed in a collateral proceeding, which the present is claimed to be.  And this view prevailed in the court below.  We find ourselves unable to accede to it.

It might well be assumed that, whether voidable or void, this judgment might be reached under the act of Maryland of 1787, Ch. 9, continued in force with other existing laws of Maryland by the act of Congress of February 27, 1801 (2 Stat. 103).  The provision of this statute is as follows:

"In any case where a judgment shall be set aside for fraud, deceit, surprise, or irregularity in obtaining the same, the said courts respectively may direct the continuances to be entered from the court (term) when such judgment was

obtained until the court (term) such judgment shall be set aside, and may also continue such cause for so long a time as they shall judge necessary for the trial of the merits between the parties after such cause has been reinstated, unless," etc.

As will be noticed, this statute rather recognizes the already existing power of the courts than confers power upon them to set aside judgments after the lapse of the term at which such judgments were rendered for any of the causes specified; and accordingly, as pointed out in the case of *Phillips* v. *Negley,* 117 U. S. 665, the courts of Maryland, whenever they have had occasion to vacate judgments after the lapse of the term, have based their authority so to do, not so much upon the statute, as upon the inherent power of the courts in the interests of justice.    The power to vacate judgments for fraud, deceit, surprise, or irregularity, was regarded by them as a species of equitable power, which the courts of common law might well exercise to prevent the necessity of recourse to a court of equity, when the common law tribunals might equally well afford the desired relief.    But in the case above cited of *Phillips* v. *Negley,* the Supreme Court of the United States, after much consideration, denied the existence of any such power in the courts of the District of Columbia, and held in substance, that after the lapse of the term the courts of this District had no authority to set aside judgments, such as was claimed and exercised by the courts of the State of Maryland.

But both in the case of *Phillips* v. *Negley* and in that of *Bronson* v. *Schulten,* 104 U. S. 410, upon which the decision in the case of *Phillips* v. *Negley* was based, the Supreme Court distinctly recognized an exception to the general rule laid down by it in those cases; and that is that errors of fact in the rendition of a judgment might be reviewed after the lapse of the term, and the judgment set aside therefor, by the same court which rendered the judgment, through the process of the writ of error *coram nobis,* or its more frequently used modern substitute, a summary motion.    And this ex-

ception is of universal application for the correction of errors of fact not apparent on the record, and for the vacation of judgments affected by such errors of fact. In the case of *Bronson* v. *Schulten* some of the errors of fact are specified for which judgments may be vacated under the writ of error *coram nobis*. Among them are such as that one of the parties to the judgment had died before it was rendered, or was an infant and no guardian had appeared or been appointed, or was a *feme covert*, or the like, or error in process through the default of the clerk. But it is not claimed that this is an exhaustive enumeration, and the text books and the authorities indicate that any fact which has not been litigated in the cause and which affects the validity of the judgment may be inquired into under the writ of error *coram nobis*.

Now, it seems to us that that there can be no more serious error of fact impugning the validity of a judgment than to assume that there has been a verdict of a jury when there has been no such verdict. *If it were conceded in this case* that no jury had been summoned at all, but that upon the issue of fact joined between the parties the court had arbitrarily and of its own motion assumed to render judgment upon the issue, we presume it would not be contended that a constitutional right had not been violated, and that a judgment falsely reciting that it was based upon the verdict of a jury would not be vacated upon writ of error *coram nobis* for this error of fact. It is true that in the present case there was a jury summoned, and the form of a trial had, and that there is something which bears the semblance of a verdict, and which the court below mistook for a verdict, but which we have held to be an absolute nullity, and, therefore, no verdict. And it is also true that the circumstances surrounding this alleged verdict were all brought to the attention of the court below before the judgment was rendered, and were matters of controversy before the court, and were made by the court itself the subject of great and earnest consideration. But the fact that there was error of law in

regarding that as a verdict which was no verdict, does not make it less an error of fact; and when the judgment now before us purports to be based upon the verdict of a jury, when there was in fact no verdict of a jury, it is not apparent to us why this should not be regarded as a most important error of fact, to be inquired into and corrected upon writ of error *coram nobis*, with the right of appeal thereon from the determination of the court.

The theory that the judgment is only voidable, and not void, and that the present is in the nature of a collateral proceeding, can only be supported upon the assumption that the verdict is no part of the record, and that the court below upon this motion, and this court upon appeal, can only examine the judgment and declaration to determine whether the judgment can be supported by the declaration. If this be so, then, undoubtedly the motion, regarded as the substitute of a writ of error *coram nobis*, is a proper proceeding wherein to raise the question of fact whether there was or was not a verdict of a jury on which to base the judgment.

But however this be, we are of opinion that this judgment is not merely voidable, but absolutely void, and that it may be so declared in any proceeding to impeach it, direct or collateral. The so-called verdict of the jury is spread upon the record, and made part of the record, and the judgment purports to be based on the verdict as rendered. The judgment, therefore, must be regarded as bearing the evidence of its infirmity upon its face. It is a judgment which the court did not have jurisdiction to pronounce, because the judgment roll itself shows that the contingency had not arisen under which it was competent for the court to render judgment. It is very clear that jurisdiction of the subject-matter and jurisdiction of the person are not always sufficient to give validity to a judgment. The due process of law, guaranteed by the Constitution and derived to us from Magna Charta, requires even then that the judgment shall not be in excess of the jurisdiction. *Windsor* v. *McVeigh,*

93 U. S. 283; *Pennoyer* v. *Neff*, 95 U. S. 733; *United States* v. *Walker*, 109 U. S. 258; *Tenney* v. *Taylor*, 1 App. D. C. 223, 227.

In the case last cited of *Tenney* v. *Taylor*, we said, and we are disposed to reiterate the statement here, that "even where there is jurisdiction of the person and of the subject-matter, if the court does not proceed according to established modes, or transcends the power granted to it by law, that fact may be shown in a collateral proceeding, and, if shown, the judgment will be regarded as void."

Apparently to the contrary effect is the case of *Maxwell* v. *Stewart*, 21 Wall. 71, and the same case on second appeal in 22 Wall. 77, in which it was held, that where the record showed that a cause had been tried by the court without a jury, it not appearing affirmatively that a jury had been waived, this at most was only error to be corrected on direct appeal, and did not invalidate the judgment on collateral proceedings. But that case appears to us to be very different from the present. The statute authorized, as it yet authorizes, the trial of issues of fact by a court upon waiver of trial by jury; and it was no more than a fair inference in support of the judgment that a trial by jury had in fact been waived. We presume the decision would have been very different if the record had shown affirmatively that the trial by jury had not been waived, that one of the parties insisted on his right to such trial, and yet that the court had itself undertaken the trial without a jury. In the present case it does appear affirmatively on the record that there was no trial by jury in the constitutional sense, because the jury rendered no verdict, inasmuch as that which eleven of them rendered was an absolute nullity.

The present case, therefore, is one in which the court assumes to render judgment upon an issue of fact, when its own record, incorporated into the judgment, shows in the most positive manner that there was no verdict, and, therefore, no trial by jury, to which the parties were entitled

under the Constitution. This appears to us to be in excess of the jurisdiction of the court.

Certain cases have been pressed upon our attention to show that, when a question claimed to be jurisdictional has been presented to a trial court and determined by it, such trial court is then acting within its jurisdiction, and its error, if error there be, can only be inquired into on appeal. The principal of these cases are those of *Eckart* (166 U. S. 481), *Belt* (159 U. S. 95), *Coy* (127 U. S. 731), and *Bigelow* (113 U. S. 328). But we do not think that these cases announce any such doctrine as is here contended for by the appellee. In the case of Eckart, for example, upon which most reliance is placed, it was said:

"It was within the jurisdiction of the trial judge to pass upon the sufficiency of the verdict and to construe its legal meaning; and if in so doing he erred and held the verdict to be sufficiently certain to authorize the imposition of punishment for the highest grade of the offence charged, it was an error committed in the exercise of jurisdiction, and one which does not present a jurisdictional defect, remediable by the writ of *habeas corpus.*"

Mr. Justice White, speaking for the Supreme Court of the United States in that case, went into an examination of the previous cases, the same that are now also cited to us; and he finds the same principle governing all of them. An examination of this last, therefore, in reference to the case now before us, may serve for all of them.

The petitioner Eckart was indicted in one of the State courts of the State of Wisconsin for the crime of murder, of which the laws of the State make three degrees; and these laws also make it the province of the jury to determine under which degree the case falls. By the jury Eckart was found guilty generally, without specification of the degree; and the trial court, holding that the indictment and verdict were sufficient to authorize a conviction for murder in the first degree, assumed to impose sentence as for that degree.

Application for a writ of *habeas corpus* was made to the Supreme Court of Wisconsin, which thereupon held that, although the sentence was erroneous, the error in passing it was not jurisdictional, and the judgment therefore was not void. Upon a similar application to the Supreme Court of the United States based upon the ground that the petitioner was deprived of liberty by the State without due process of law, that tribunal concurred in the doctrine announced by the Supreme Court of Wisconsin. What it said was this:

"The court had jurisdiction of the offence charged and of the person of the accused. The verdict clearly did not acquit him of the crime with which he was charged, but found that he had committed an offence embraced within the accusation upon which he was tried. It was within the jurisdiction of the trial judge to pass upon the sufficiency of the verdict and to construe its legal meaning; and if in so doing he erred, and held the verdict to be sufficiently certain to authorize the imposition of punishment for the highest grade of the offence charged, it was an error committed in the exercise of jurisdiction, and one which does not present a jurisdictional defect, remediable by the writ of *habeas corpus*. The case is analogous in principle to that of trial and conviction upon an indictment, the facts averred in which are asserted to be insufficient to constitute an offence against the statute claimed to have been violated. In this class of cases it has been held that a trial court possessing general jurisdiction of the class of offences within which is embraced the crime sought to be set forth in the indictment is possessed of authority to determine the sufficiency of an indictment, and that in adjudging it to be valid and sufficient, acts within its jurisdiction, and a conviction and judgment thereunder can not be questioned on *habeas corpus*, because of a lack of certainty or other defect in the statement in the indictment of the facts averred to constitute a crime. *In re Otey*, 127 U. S. 731, 756, 758 and cases there cited."

Now, neither this case nor any other of the cases cited in

connection with it, seems to us to be an authority for the
position taken by the appellee in the case now before us.
There was in the Eckart case an indictment, upon that in-
dictment a trial by jury, and as the result of that trial by
jury a verdict, which it may be remarked was perfectly
good and sufficient at common law, but which, in view of
the requirements of the statute, was imperfect or of doubt-
ful import. It required construction by the court as to its
legal meaning and sufficiency; and the trial court, errone-
ously, it would seem, but still in the due exercise of its jur-
isdiction, construed the verdict to mean one for murder in
the first degree. But to construe a verdict of doubtful im-
port is a very different thing from assuming the existence
of a verdict when there is no verdict in existence; just as
to construe an indictment supposed to be doubtful, if we
may follow up the illustration given in the Eckart case, is
a very different thing from proceeding without any indict-
ment whatever. In the one case there would be legitimate,
although perhaps erroneous construction; in the other there
would be plain excess of jurisdiction.

To argue that because a question may be raised and passed
upon in the trial court, and legitimately passed upon by
that court in the due exercise of its jurisdiction, therefore
the question of jurisdiction could not thereafter be inquired
into collaterally, is to argue in a vicious circle, as was pointed
out in the case of *Thompson* v. *Whitman*, 18 Wall. 467. All
courts in all cases necessarily pass upon the question of their
own jurisdiction, either expressly or by necessary implication.
For when they entertain jurisdiction of a cause, they neces-
sarily decide that the jurisdiction exists. If the fact of such
decision by them is to be conclusive, then there could be no
investigation whatever of such jurisdiction in any collateral
proceeding, a deduction which we know to be an absurdity
and not warranted by any adjudicated case. The sufficiency
of that which exists is one thing; the existence or nonexist-
ence of a jurisdictional fact is another and a very different

thing.   The nonexistence of a jurisdictional fact will render a judgment void; an erroneous ruling on the existence of an existing fact can only affect a judgment when it is attacked by way of appeal or writ of error.   This would seem to be the proper criterion of distinction in the authorities.

What Mr. Justice Bradley, speaking for the Supreme Court of the United States, in the case of *Ex parte Nielsen,* 131 U. S. 176, said, although with reference to a criminal case, would seem to be appropriate here in principle.   He said: "It is difficult to see why a conviction and punishment under an unconstitutional law is more violative of a person's constitutional rights than an unconstitutional conviction and punishment under a valid law."   The right of trial by jury, when not waived, or assumed to have been waived, is a constitutional right; and the verdict of a jury is a jurisdictional act without which a court may not validly pronounce judgment.   As we have intimated, there may be cases in which parties will be precluded or estopped in collateral proceedings from denying that there was such trial.   But when the fact appears affirmatively upon the record that there was no such trial, and at the same time the fact appears that there should have been such trial, and yet the court proceeded in disregard thereof to determine the cause itself in the place of the jury and to enter judgment, we cannot hold that it was in the due exercise of jurisdiction.

We must hold that the judgment rendered in this cause was equally void with the alleged verdict upon which it was founded.   But if we are wrong in this, it is satisfactory to know that our own conclusion thereon is subject to review in a higher tribunal.   Being of this opinion, however, we must *reverse the order appealed from, with costs, and remand the cause to the court below, with directions to vacate its judgment and set aside the verdict in the cause and to award a new trial. And it is accordingly so ordered.*