# PHILLIPS & Another, Executors, *v.* NEGLEY.

ERROR TO THE SUPREME COURT OF THE DISTRICT OF COLUMBIA.

Argued March 25, 26, 1886.—Decided April 12, 1886.

Final judgments at law cannot, by proceedings taken after the close of the term at which they were entered, be reversed or annulled for errors of fact or law by the court which rendered them; except that clerical mistakes, and such mistakes of fact not put in issue or passed upon as may be corrected by writ of error *coram vobis* (or on motion in place of that writ where such practice prevails), and a mistake in the dismissal of a cause, may be corrected after that time : the same rule applies in equity, excepting, further, the right to take jurisdiction of bills for review.

The appropriate remedy to set aside or enjoin the execution of judgments at law, wrongfully obtained, is by bill in equity.

So far as the rule prevails in Maryland that judgments may, at a term subsequent to that at which they were entered, be amended in essential matters, reversed, or annulled by the court which rendered them, that rule, whether founded on a construction of the Maryland statute of 1787 by the highest court of the State, or on an interpretation of the common law, is not binding on the courts of the United States in the District of Columbia.

Error to review an order vacating a judgment. After the cause was docketed here plaintiff in error died, and his executors were admitted to prosecute the writ of error.

The facts material to a determination of the questions arising in the cause were as follows:

Philip Phillips sued the defendant Negley, in the Supreme Court of the District of Columbia, on August 29, 1874, to recover $4368, alleged to be due upon a certain order in writing, signed by Simon Witkowski and by the defendant, as attorney for Mrs. Witkowski, addressed to Charles F. Peck and Charles E. Hovey, and by them accepted, payable out of money received by them from the United States, arising from a judgment in the Court of Claims in favor of Witkowski. A copy of the order was attached to the declaration.

Process was served personally on the defendant on the same day.

On October 26, 1874, Negley filed an affidavit of defence, denying his liability, on the ground that the order was signed by him only as the agent and on behalf of Mrs. Witkowski; alleging that the plaintiff was not in fact holder of the same for value; and denying notice of nonpayment, and any indebtedness whatever.

On May 3, 1877, the plaintiff joined issue on these pleas; and on April 3, 1879, the defendant not appearing, a jury was called, who found a verdict for the plaintiff for the sum demanded, with interest, and judgment was rendered thereon.

On September 4, 1882, the defendant filed his motion "to vacate the judgment and set aside the verdict entered herein *ex parte* on the 3d day of April, 1879, because of irregularity, surprise, fraud and deceit in the procurement of said verdict and judgment, and the negligence of defendant's attorney, the

particulars of which appear in the affidavit of the defendant filed herewith and in the record and papers on file in this case."

In support of this motion the affidavits of the defendant, Negley and of Richard Harrington were filed. In that of the defendant he denied his personal liability on the order, and said that when served with process in the cause he was temporarily in Washington, being at the time and always since a resident of Pittsburgh; that he employed Harrington as his attorney and filed his affidavit of defence, and received no further notice or information in reference to the suit from the fall of 1874 until about July 26, 1882, when he was served with process in a suit brought on the judgment in Allegheny County, Pennsylvania; that after he filed his affidavit of defence in the original suit, that is, from October 26, 1874, the plaintiff "seemed to have abandoned the case, and thereby to mislead affiant's attorney;" that the plaintiff took no notice of the plea until May 3, 1877, when he joined issue, but gave no notice of trial; that in the meantime, without defendant's knowledge, Harrington had removed from the city of Washington, as was well known to the plaintiff and his counsel, leaving the defendant without an attorney; that on April 3, 1879, without any notice to the defendant, the case was called for trial, and in his absence the plaintiff, with knowledge that the defendant was ignorant of the proceedings, called for a jury, and without other proof than the production of the order sued on, procured the verdict and obtained the judgment thereon, and that by reason of the premises the said proceedings and judgment are a fraud upon him.

Harrington stated in his affidavit that he understood that the plaintiff had abandoned his suit, and that he believed he so informed his client, the defendant, and that he, Harrington, removed from the District of Columbia in March, 1875, and had not since resided or practised law therein, and that on such removal he undertook to notify all his clients, but having considered this cause at an end by reason of the plaintiff's failure to join issue or take action on the plea therein, as required by the rules of the court, he did not notify the defendant, and that the plaintiff and his attorney well knew, when said cause was

set down for trial, that the affiant had removed to Dover, Delaware.

Notice of this motion was served upon the plaintiff in the judgment, who appeared and filed counter affidavits of himself and of his attorney, William F. Mattingly. The latter stated that he mailed notices of the trial of the issues in the action for the May Term, 1877, in due time, to what he understood to be the post-office address both of Harrington and of the defendant, and that the cause stood for trial from thence until the January Term, 1879. The plaintiff, in his affidavit, denied all charges of fraud, and said that on the trial of the action the verdict was taken upon testimony showing that, after the delivery to the plaintiff of the order sued on, the defendant obtained possession of the fund out of which the same was to have been paid, and failed to make the proper application of the same.

On December 2, 1882, the Supreme Court of the District, holding a special term and Circuit Court, entered the following order:

"Philip Phillips, Pl'ff,
         v.    } At Law. No. 12,890.
James S. Negley, Def't.

"This cause coming on to be heard upon the defendant's motion to vacate the judgment and set aside the verdict entered herein *ex parte* on the 3d day of April, 1879, because of irregularity, surprise, fraud, and deceit, and the same having been argued by counsel on both sides, and duly considered, it is considered by the court that said verdict and judgment be, and the same are hereby, vacated, set aside, and for nothing held, and a new trial granted."

From this order an appeal was taken to the court in general term, December 9, 1882, and on February 15, 1883, the defendant moved the court to dismiss the appeal, on the ground that an appeal would not lie from such an order made at the Circuit Court or special term.

The proceedings in general term resulted in the following order entered February 19, 1883:

" Now come here as well the plaintiff as the defendant, by their respective attorneys, whereupon, because it appears to the court here that there is no error in the record and proceedings of the special term, therefore, the court remands the case to the special term, there to be proceeded with as if no appeal had been taken from its order of December 2, 1882, which appeal is hereby dismissed with costs, to. be taxed by the clerk. The plaintiff gives notice that he will prosecute a writ of error, and the penalty of his supersedeas bond is fixed at $500."

To reverse these proceedings and orders this writ of error was prosecuted.

*Mr. John Selden* and *Mr. W. Hallett Phillips* for plaintiff in error.

*Mr. Job Barnard* for defendant in error. *Mr. James S. Edwards* was with him on the brief.

A writ of error will not lie to review an order granting a new trial. *Ins. Co.* v. *Barton*, 13 Wall. 603; *Newcomb* v. *Wood*, 97. U. S. 581; *Railway Co.* v. *Heck*, 102 U. S. 120. If the order is subject for review it was one within the jurisdiction of the court and proper to be made. *Harris* v. *Hardeman*, 14 How. 334; *Herbert* v. *Rowles*, 30 Maryland, 271, 278; *Stacker* v. *Cooper County*, 25 Missouri, 401; *Millspaugh* v. *McBride*, 7 Paige, 509. It was entirely irregular under the rules of the Supreme Court of the District to file a joinder of issue and note of issue, in the absence of defendant and his attorney, and knowing of such absence; with no permission from the court, and. in the absence of a notice of trial. We desire to call the attention of the court to these rules.*

---

* 31. *Replication, &c.*—"After the plea filed and served, the plaintiff shall reply, and after replication filed, the defendant shall rejoin, and so on till issue is joined, within ten days after the last pleading filed, excluding the day of such filing ; otherwise, on motion and notice thereof the suit may be dismissed, or judgment taken by default, according as the failure is by the plaintiff or defendant."

42. *Notice of trial.*—"At any time after issue joined, and at least ten days before the sitting of the court at which the cause stands for judgment or trial, either party may give notice of trial."

The action of the court below was in accordance with what we understand to be the settled law and practice of this court. *Bronson* v. *Schulten*, 104 U. S. 410, when taken in connection with the facts in that case, is no authority against it: and the whole current of previous authority sustains the jurisdiction. *Walden* v. *Craig*, 9 Wheat. 576; *Boyle* v. *Zacharie*, 6 Pet. 648; *Pickett* v. *Legerwood*, 7 Pet. 144, 147; *Harris* v. *Harde-man*, above cited. The rulings in the Circuit Courts are the same. *Sheepshanks* v. *Boyer*, Baldw. 462; *Den* v. *McAllister*, 4 Wash. C. C. 393; *Albree* v. *Johnson*, 1 Flippin, 341; *Daw-son* v. *Daniel*, 2 Flippin, 301. In any event the courts of the District of Columbia possess such power. The laws of Maryland previous to the cession are in force in the District, and among those laws was the act of 1787, ch. 9, § 6, which, as construed by the courts of Maryland, undoubtedly conferred upon the courts of Maryland the jurisdiction exercised in this case. See *Tiernan* v. *Hammond*, 41 Maryland, 548. The courts of the District so understood, and practised upon it. *Sherburne* v. *King*, 2 Cranch, C. C. 205; *McCormick* v. *Ma-gruder*, 2 Cranch, C. C. 227; *Union Bank* v. *Crittenden*, 2 Cranch, C. C. 238; *Ault* v. *Elliott*, 2 Cranch, C. C. 372; *Ring-*

---

52. " If the defendant fail to appear when the cause is called for trial, the plaintiff may have him called, and take a judgment by default."

60. *Motions for a new trial.*—" Motions for a new trial, which are designed to set aside a verdict and procure a new trial of a case, are of two kinds, to wit:

" 1. Those which are grounded upon alleged error of law by the justice presiding, &c.

" 2. Those which are grounded upon the following, and similar allegations:

1. " That the party moving for the new trial had no notice, and did not appear at the trial;

2. " Misbehavior of the successful party;

\*       \*       \*       \*       \*       \*

6. " That the verdict was obtained by surprise, &c."

"These motions are addressed to the discretion of the Justice presiding at the trial, and are not appealable."

90. *Motion to vacate judgment.*—" This motion will not be entertained, if made after the defendant has taken any fresh step after the knowledge of the irregularity, or surprise, or fraud, or deceit complained of; nor can it be made after the execution executed, unless defendant had no notice of the judgment," &c.

*gold* v. *Elliott*, 2 Cranch, C. C. 462; *Reiling* v. *Bolier*, 3 Cranch, C. C. 212.

Mr. Justice Matthews, after stating the case as above reported, delivered the opinion of the court.

There appears to be an ambiguity, if not an inconsistency, in the terms of the order or judgment of the general term. It affirms that there is no error in the record and proceedings of the special term, but does not affirm its order, which was appealed from, but in fact dismisses the appeal, as though it had no jurisdiction either to affirm or reverse the order brought up by the appeal. Interpreting the judgment of the general term by the opinion of the learned judge, who spoke for the court, *Phillips* v. *Negley*, 2 Mackey, 236, we must infer that it was intended to dismiss the appeal for want of jurisdiction to entertain it, on the ground that the order of the special term, vacating its own judgment, rendered at a previous term, was not only within the power of that court, but was so purely discretionary that it was not reviewable in an appellate court. The same consideration is urged upon us as a ground for dismissing the present writ of error for want of jurisdiction in this court, it being alleged that the order of the Supreme Court of the District at special term is one not only within the discretion of that court, but that, as it merely vacates a judgment for the purpose of a new trial upon the merits of the original action, it is not a final judgment, and, therefore, not reviewable on writ of error. If, properly considered, the order in question was an order in the cause, which the court had power to make at the term when it was made, the consequence may be admitted, that no appellate tribunal has jurisdiction to question its propriety; for, if it had power to make it, and it was a power limited only by the discretion of the court making it, as in other cases of orders setting aside judgments at the same term at which they were rendered, and granting new trials, there would be nothing left for the jurisdiction of an appellate court to act upon. The vacating of a judgment and granting a new trial, in the exercise of an acknowledged jurisdiction, leaves no judgment in force to be reviewed. If, on

the other hand, the order made was made without jurisdiction on the part of the court making it, then it is a proceeding which must be the subject of review by an appellate court. The question of the jurisdiction of this court to entertain the present writ of error, therefore, necessarily involves the jurisdiction of the Supreme Court of the District, both at special and general term, and the nature and effect of the order brought into review, so that the question of our jurisdiction is necessarily included in the question of the validity of the proceeding itself.

The legal proposition involved in the judgment complained of, and necessary to maintain it, is, that the Supreme Court of this District at special term has the same discretionary power over its judgments, rendered at a previous term of the court, without any motion or other proceeding to that end made or taken at that term, to set them aside and grant new trials of the actions in which they were rendered, which it has over judgments, when such proceedings are taken during the term at which they were rendered; and that this being true, the proceeding and order of the court, in the exercise of this jurisdiction and discretion, cannot be reviewed on appeal or writ of error.

This proposition, it is argued, may be deduced from the inherent and implied powers of all courts of record, according to the course of the common law; and, if that fails, is supplied by the law of Maryland, as to the Supreme Court in the District of Columbia, adopted by the act of Congress of 27th February, 1801. 2 Stat. 103.

The first branch of this proposition is conclusively negatived for this court, in regard to the powers of the courts of the United States, by the decision in *Bronson* v. *Schulten,* 104 U. S. 410, 415, which is an authority directly upon the point. It was there said by Mr. Justice Miller, speaking for the court:

"In this country all courts have terms and vacations. The time of the commencement of every term, if there be half a dozen a year, is fixed by statute, and the end of it by the final adjournment of the court for that term. This is the case with regard to all the courts of the United States, and if there be

exceptions in the State courts they are unimportant. It is a general rule of the law that all the judgments, decrees, or other orders of the courts, however conclusive in their character, are under the control of the court which pronounces them, during the term at which they are rendered or entered of record, and they may then be set aside, vacated, modified or annulled by that court. But it is a rule equally well established that, after the term has ended, all final judgments and decrees of the court pass beyond its control, unless steps be taken during that term, by motion or otherwise, to set aside, modify or correct them; and if errors exist, they can only be corrected by such proceeding, by a writ of error or appeal, as may be allowed in a court which, by law, can review the decision. So strongly has this principle been upheld by this court that, while realizing that there is no court which can review its decisions, it has invariably refused all applications for rehearing made after the adjournment of the court for the term at which the judgment was rendered. And this is placed upon the ground that the case has passed beyond the control of the court."

The opinion then notices an exception to this rule founded upon the common law writ of error *coram vobis,* by which errors of fact might be corrected, limited generally to the facts that one of the parties to the judgment had died before it was rendered, or was an infant and no guardian had appeared or been appointed, or was a *feme covert,* and the like, or error in the process through the fault of the clerk; for which writ, as was said in *Pickett's Heirs v. Legerwood,* 7 Pet. 144, in practice, a motion is now substituted, heard in a summary manner upon affidavits. And it is then added, that this remedy by motion has been extended in some States so as to embrace some of the cases where equitable relief had been administered by courts of chancery. "This practice," it was said, "has been founded in the courts of many of the States on statutes which conferred a prescribed and limited control over the judgment of a court after the expiration of the term at which it was rendered. In other cases the summary remedy by motion has been granted as founded in the inherent power of the

court over its own judgments, and to avoid the expense and delay of a formal suit in chancery." But it is added: "The question relates to the *power* of the courts, and not to the mode of procedure. It is whether there exists in the court the authority to set aside, vacate, and modify its final judgments after the term at which they were rendered; and this authority can neither be conferred upon nor withheld from the courts of the United States by the statutes of a State or the practice of its courts." 104 U. S. 417. Although the opinion also shows that, upon the facts of that case, the action of the Circuit Court in vacating its judgment after the term could not be justified upon any rule authorizing such relief; whether by motion or by bill in equity, nevertheless the decision of the case rests upon the emphatic denial of the power of the court to set aside a judgment upon motion made after the term and grant a new trial, except in the limited class of cases enumerated as reached by the previous practice under writs of error *coram vobis*, or for the purpose of correcting the record according to the fact, where mistakes have occurred from the misprision of the clerk. We content ourselves with repeating the doctrine of this recent decision, without recapitulating previous cases in this court, in which the point has been noticed, for the purpose of showing their harmony. It has been the uniform doctrine of this court. "No principle is better settled," it was said in *Sibbald* v. *The United States*, 12 Pet. 488, 492, "or of more universal application, than that no court can reverse or annul its own final decrees or judgments, for errors of fact or law, after the term in which they have been rendered, unless for clerical mistakes; *Cameron* v. *McRoberts*, 3 Wheat. 591; *Bank of Kentucky* v. *Wistar*, 3 Pet. 431; or to reinstate a cause dismissed by mistake; *The Palmyra*, 12 Wheat. 1; from which it follows that no change or modification can be made which may substantially vary or affect it in any material thing. Bills of review, in cases in equity, and writs of error *coram vobis* at law, are exceptions which cannot affect the present motion." And see *Bank of the United States* v. *Moss*, 6 How. 31, 38; *Schell* v. *Dodge*, 107 U. S. 629.

It is equally well established by the decisions of this court

that the appropriate remedy for relief against judgments at law, wrongfully obtained, is by a bill in equity, and the cases in which that remedy is applicable have been clearly defined. That rule was formulated by Chief Justice Marshall in a case arising in this District, of *Marine Insurance Company of Alexandria* v. *Hodgson*, 7 Cranch, 332, and more tersely stated by Mr. Justice Curtis in *Hendrickson* v. *Hinckley*, 17 How. 443, 445, as follows: "A court of equity does not interfere with judgments at law, unless the complainant has an equitable defence of which he could not avail himself at law, because it did not amount to a legal defence, or had a good defence at law, which he was prevented from availing himself of by fraud or accident, unmixed with negligence of himself or his agents." This rule was supported by *Creath* v. *Sims*, 5 How. 192, and *Walker* v. *Robbins*, 14 How. 584, and was followed in *Crim* v. *Handley*, 94 U. S. 652; in *Brown* v. *County of Buena Vista*, 95 U. S. 157; and in *Embry* v. *Palmer*, 107 U. S. 3; where it was considered and applied in a case in which the Supreme Court of Errors of Connecticut, having enjoined proceedings in that State upon a judgment of the Supreme Court of this District for causes not sufficient in law to have authorized the latter to set it aside, the judgment of the Connecticut Court was reversed, although no question was made of the right of that court to entertain the jurisdiction to enjoin proceedings upon the judgment in question, equally with that of the court by which it was rendered. This independent jurisdiction in equity over judgments at law, by implication, negatives the remedy at law in the same courts where they are rendered, for the same causes, because that equitable jurisdiction is resorted to only because there was no adequate remedy at law, the jurisdiction of the courts of law over the cause and the parties having been exhausted when the judgment became final.

But it is argued that the power exercised in the present instance is vested in the Supreme Court of this District by virtue of the laws of Maryland in force February 27, 1801, adopted by the act of Congress of that date.

The statute of Maryland supposed to confer this power is an

act of 1787, ch. 9, 2 Kilty Laws, Thomp. Dig. 173, relating to continuances, the sixth section of which is as follows:

"In any case where a judgment shall be set aside for fraud, deceit, surprise, or irregularity in obtaining the same, the said courts respectively may direct the continuances to be entered from the court when such judgment was obtained, until the court such judgment shall be set aside, and may also continue such cause for so long a time as they shall judge necessary for the trial of the merits between the parties, not exceeding two courts after such cause has been reinstated, unless, &c."

This statutory provision, it will be observed, is entirely silent as to the mode according to which a judgment may be set aside at a subsequent term, whether by a writ of error coram vobis or coram nobis, bill in equity, or other procedure, and does not, either in express terms or by any necessary implication, provide that it may be done by a motion and summary proceedings thereon; and also, that it seems to proceed upon the idea that continuances should regularly be entered to show that the proceeding, if at law, to set a judgment aside, in theory at least, ought to originate at the same term at which the judgment was rendered.

The remedy by writ of error coram nobis continued in force and in use in Maryland. *Hawkins* v. *Bowie*, 9 G. & J. 428, 437; *Bridendolph* v. *Zeller's Executors*, 3 Maryland, 325. And in the first of these cases it was held that a reversal of a judgment upon such a writ was a final judgment from which an appeal would lie. The court said: "Now, if reversing the original judgment and awarding costs to the plaintiff in error in this proceeding in error coram nobis, was not so far final as to fall within that class of judicial acts from which an appeal will lie to this court, we cannot see the reason, nor can we well conceive of any remedy the parties would have if the county courts were to undertake to vacate and annul all the judgments in their records." This remark equally applies whether the result is reached by this writ or by the more summary mode of a motion. It was so decided in *Graff* v. *Merchants' & Miners' Transportation Co.*, 18 Maryland, 364, and *Craig* v. *Wroth*, 47 Maryland, 281. In the last-named case, it was said by the

court : " The power to set aside judgments upon motion for fraud, deceit, surprise, or irregularity in obtaining them, is a common law power *incident* to courts of record in this State, and was not *conferred* upon them by the act of 1787, ch. 9, sec. 6; which is partially but not fully embodied in section 38, art. 75 of the Code. This legislation *assumes* that the power resides in the courts, and provides for the entering of continuances when it is put in force. In deciding such motions made after the term is past, the court acts in the exercise of its *quasi* equitable powers, and will, therefore, properly consider all the facts and circumstances of the case, and require that the party making the application shall appear to have acted in good faith and with ordinary diligence ; relief will not be granted when he has knowingly acquiesced in the judgment complained of, or has been guilty of *laches* and unreasonable delay in seeking his remedy." This seems to be the settled doctrine of the Maryland courts, as shown by a series of decisions, all of which, however, have been made since the cession of the present territory within the District of Columbia. *Kemp* v. *Cook*, 18 Maryland, 130 ; *Montgomery* v. *Murphy*, 19 Maryland, 576. In *Kemp* v. *Cook*, the court said : " The power of setting aside judgments upon motion is a common law power incident to courts of record, and exercised usually under restraints imposed by their own rules and rarely after the term in which the judgment was rendered." " The judgment records of the State are the highest evidences of debt known to the law ; they are presumed to have been made up after the most careful deliberation, upon trial or hearing of both parties. To permit them to be altered or amended without the most solemn forms of proceeding would be contrary to law and good policy."

It appears also from the case of *Kearney* v. *Sascer et al.*, 37 Maryland, 264, that the jurisdiction of the Court of Chancery, upon a bill in equity, to grant relief against a judgment on equitable grounds, constitutes part of the remedial system in that State, notwithstanding the practice to set aside judgments on motion made after the term ; and in that case the court quoted and adopted the rule regulating the measure of relief, and the circumstances justifying the court in granting it, as

declared by Chief Justice Marshall in *Marine Ins. Co.* v. *Hodgson*, 7 Cranch, 332, 336.

It thus appears. that in Maryland, prior to 1801, the only statute in existence referring to the subject, while it assumes the existence of a power in the courts to set aside their judgments, after the term in which they were rendered, for certain causes, does not specify the modes in which that relief may be administered, and does not enumerate a summary proceeding by motion as one of them; that the cases in which that relief has been administered in that way have all arisen and been decided since the date of the cession to the United States of the territory constituting the District of Columbia; that these decisions are based, not upon the statute as creating or conferring such power, but upon an interpretation of the common law by which all courts of record are assumed to be possessed of it, as adherent in and incident to their constitution as courts of justice; that, in whatever form, the proceedings are regarded, not as interlocutory steps in the original cause, but as independent applications to a legal discretion governed by fixed rules, and, therefore, terminating in final judgments, subject as in other cases to review or error in a court of appeal; and that the jurisdiction of chancery by a plenary suit in equity is not excluded, but is maintained and exercised in conformity with the general principles of equity jurisprudence.

It follows from this statement that these decisions of the Maryland courts, being founded upon general principles, and made since the organization of the District of Columbia, are not binding upon the courts of the District as authorities, though entitled to all the respect due to the opinions of the highest court of the State; a rule acted upon in this court in *Ould* v. *Washington Hospital*, 95 U. S. 303, and approved in *Russell* v. *Allen*, 107 U. S. 163, 171. We feel at liberty, therefore, to follow our own convictions as to the power of the courts of the District over their judgments; and are of opinion, and so decide, that, after the term at which they were rendered, the power of the court over the parties and over its record remains only in the excepted cases already noticed, when, on motion, it may be purged of clerical errors, or the judgment reversed by

proceedings for errors in fact, in analogy to the practice in cases of writs of error *coram vobis*, unless it is invoked by a formal bill in equity upon grounds recognized as furnishing a title to relief. We are, therefore, of opinion that the Supreme Court of the District, both at special and general term, in entertaining and granting the motion to set aside the judgment in the present case, committed error, and the proceedings and judgment thereon are

> *Reversed, and the cause remanded, with directions to dismiss the motion of the defendant, but without prejudice to his right to file a bill in equity.*