# MILLER v. UNITED STATES.*

CRIMINAL LAW; SUSPENDING SENTENCE; CONSOLIDATED INDICTMENTS; FORMER JEOPARDY; CHALLENGES TO JURY; STATUTORY CONSTRUCTION; INDICTMENT; EVIDENCE; QUESTIONS FOR JURY; INSTRUCTIONS; EMBEZZLEMENT; INTENT.

1. At common law all superior courts of criminal jurisdiction had inherent power to suspend sentence after conviction.

2. A trial court in a criminal case has power to continue the prosecution's motion for sentence on a verdict of "guilty," under a rule of court providing that each term shall continue until the commencement of the next, and, as to any particular cause, until the disposition of any motion.

3. An accused who was found guilty under consolidated indictments cannot, where he failed to seasonably assert former jeopardy on the retrial, avail himself, on appeal from a judgment of conviction on the retrial, of objections to an order of the court on the former trial, suspending sentence under one indictment and ordering that the indictment be retried with the other, conviction under which had in the meantime been reversed on appeal upon the ground that a juror was disqualified.

4. Former jeopardy, in order to be taken advantage of, must be specially pleaded, and cannot be urged for the first time on appeal.

5. The statutory number of peremptory challenges will not be allowed a sole defendant for each of two consolidated indictments against him, based upon charges which could have been embraced under separate counts in a single indictment. (Reaffirming Miller v. United States, 38 App. D. C. 361, 370, 40 L.R.A.(N.S.) 973.)

6. The exercise of the discretion which the trial court has in the matter of challenges for cause will not be disturbed on appeal by the accused, where that court overruled such a challenge of a talesman who admitted that he remembered reading newspaper reports of the alleged crime, and stated they made an impression upon his mind, but that he could disregard such impression and render a verdict according to the evidence. (Citing Howgate v. United States, 7 App. D. C. 217; and Horton v. United States, 15 App. D. C. 310.)

---

*Criminal law; suspending sentence.—As to power of court to suspend sentence or stay execution of sentence, see notes to State v. Abbott, 33 L.R.A.(N.S.) 112; and Fuller v. State, 39 L.R.A.(N.S.) 242.

7. A statute making it an offense to take away or conceal, with intent to injure another, "any writing whereby the estate or right of such other person shall be defeated," is not void for ambiguity, on the ground that the absence of a comma after the word "writing" results in a meaningless qualification of that word, since the comma may be inserted by the court. (Citing *United States* v. *Cella*, 37 App. D. C. 423.)

8. An indictment for the statutory offense of taking away or concealing, with intent to injure another, any writing, whereby the estate or right of such other shall be injured, is sufficient where it alleges that a building association, the defendant's relation to which was shown, kept certain carefully described books, and that the defendant on a day named, unlawfully, wilfully, and with an intent to defraud and injure the association and the stockholders and members thereof, did take away and conceal the books.

9. A properly verified transcript of the reporter's stenographic notes of the testimony given at a preceding trial by a witness who has since died is admissible in evidence.

10. Evidence as to transactions which brought certain funds into the hands of one charged with the statutory offense of taking or concealing the writings of another, and as a result of which he might have been held personally liable in a civil action, is not rendered inadmissible on the question of intent, by the fact that such transactions constituted the basis of a count in an indictment for embezzlement on which the accused was acquitted in earlier proceedings.

11. The question whether there was a taking in violation of a statute making it an offense to take the writings of another with intent to injure him should not be taken from the jury, where there is evidence that the writings were in a safe of which the accused only knew the combination, that accused had a motive for their destruction, and that they disappeared in circumstances pointing to his guilt.

12. One convicted of embezzlement cannot complain of the refusal of the trial court to grant a special instruction asked by him, to the effect that a conviction could not be founded on the mere fact that he received the money, and the absence of any explanation of the use to which he applied it, where the instruction leaves out of view other facts in evidence, and the court did charge that there could be no conviction, unless the defendant received the money as an officer of a building association, as alleged, and wrongfully converted the same while in his possession.

13. The formation of an intent to appropriate money before or at the

time of receiving it will not prevent a conviction for embezzlement under sec. 834, D. C. Code [31 Stat. at L. 1325, chap. 854], on the theory that the offense was larceny, where the money was not obtained by trick or device, but was regularly intrusted to the accused as an agent. (Following *Rhode* v. *United States*, 34 App. D. C. 249; *Woodward* v. *United States*, 38 App. D. C. 323.)

No. 2540.   Submitted October 10, 1913.   Decided November 3, 1913.

HEARING on an appeal by the defendant from judgments of the Supreme Court of the District of Columbia, on consolidated indictments, convicting him of embezzlement and of taking away certain books with intent to injure and defraud another.                                    *Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from judgments upon verdict in the supreme court of the District under two consolidated indictments charging J. Barton Miller, defendant, appellant here, with embezzlement and with violating sec. 840 of the Code [31 Stat. at L. 1326, chap. 854] by taking away certain books with intent to injure and defraud another person. Twice previously has the case been before this court, 37 App. D. C. 138, 38 App. D. C. 361, 40 L.R.A.(N.S.) 973.

Following the verdict of guilty in the second trial, which was the first trial of the consolidated indictments, a motion for a new trial as to the embezzlement indictment was filed, and, at the same time, June 23, 1911, motions for a new trial and in arrest of judgment as to the indictment charging concealment of the books, or, as we shall hereinafter allude to it, the book indictment, were filed. The motion for a new trial under the embezzlement indictment was overruled, judgment entered, and an appeal taken. The motions for a new trial and in arrest of judgment under the book indictment were overruled, the defendant noting an exception, "and thereupon (according to the record) the attorney of the United States moves the court to pronounce the sentence of the law in this case; whereupon the

court continues the said motion for sentence until the further order of the court; and thereupon the defendant enters into a recognizance in the sum of one hundred (100) dollars for his appearance in this court   *   *   *   when required   *   *   *." The defendant's appeal under the embezzlement indictment in due course came on to be heard in this court, and the judgment was reversed because of the disqualification of a juror, and a new trial awarded. Thereupon the United States attorney brought to the attention of the court below the fact that the two indictments had been tried together, and hence that the juror found to have been disqualified by this court was equally disqualified in the trial under the book indictment. The United States attorney thereupon moved the court to set aside the verdict of guilty under the book indictment, to the end that the two indictments again might be consolidated for trial. The defendant, through his counsel, objected to the consideration of this motion, "upon the grounds that the term at which the said verdict was rendered had expired, and that no motion to set aside the said verdict was made at the said term or at any time prior thereto, and, further, that at the said term the defendant's motion to set aside the said verdict had been considered and overruled by the court." These objections were overruled, exceptions noted, and the court entered an order that the order theretofore entered in said cause on June 23, 1911, continuing the motion of the United States attorney for sentence, be vacated, and that the motion be overruled, "and it appearing from the record herein that one of the jurors who sat in the cause was disqualified to act as such, it is further ordered that the said verdict of guilty be, and the same hereby is, set aside and held for naught, and that the said cause stand for a new trial." To this the defendant noted a general objection and exception. Thereupon, on November 15, 1912, the motion of the United States attorney for a consolidation of the two indictments was granted by the court, to the granting of which the defendant again noted a general objection and exception. When the case was reached for trial, December 2, 1912, the defendant interposed no objection to proceeding therewith, either by plea in

abatement, plea of *autrefois convict,* or otherwise. He did, however, through his counsel, state to the court "that, in view of the fact that, by an order of consolidation made in the said causes, the defendant was on trial upon both said indictments, * * * he claimed the right to twenty peremptory challenges instead of to ten." To the ruling of the court that he was entitled to but ten peremptory challenges, the defendant excepted. No plea of *autrefois convict* was filed at any stage of the case, nor was any suggestion to that effect ever made in the court below.

The first assignment of error challenges the action of the court below in vacating the order continuing the motion for sentence entered under the book indictment, the setting aside of the verdict therein, and the ordering of the cause to stand for a new trial. It is insisted that the action of the court in continuing the government's motion for sentence until further order amounted to a final disposition of the cause, and hence that the court had no jurisdiction over the cause thereafter. To this the government answers: First, that the court's action was authorized by sec. 2 of rule 1 of the rules of the court below, which provides that "each term shall continue until the commencement of the next term, and, as to any particular cause, until a final disposition of any motion * * * within the time allowed by these rules;" that by failing to object to the order of continuance, and by giving his personal recognizance to appear for sentence "when required," the defendant consented to the order. Second, assuming the trial court's jurisdiction over the case, the government further insists that that court was vested with power and charged with the duty of setting aside the verdict on the book indictment and ordering a new trial, and in support of this contention the following authorities are cited: *Rex* v. *Holt,* 5 T. R. 436; 2 Tidd, Pr. 912; 2 Thomp. Trials, 2d ed. sec. 2711; *Williams* v. *Circuit Ct.* 5 Mo. 248; *Gould* v. *Tatum,* 21 Ark. 329; *McCabe* v. *Lewis,* 76 Mo. 296; *Weber* v. *Kirkendall,* 44 Neb. 766, 63 N. W. 35; *Com.* v. *Endrukat,* 231 Pa. 529, 35 L.R.A.(N.S.) 470, 80 Atl. 1049. And, third, the government also insists that the

only way in which the defendant could question the action of the trial court in setting aside the verdict of guilty, and in again placing him upon trial under the book indictment, was by plea of former jeopardy, and that, by proceeding to trial and verdict without interposing such a plea, he waived his right so to do and must now abide the result.

*Mr. Henry E. Davis* and *Mr. John E. Laskey* for the appellant.

*Mr. Clarence R. Wilson,* United States District Attorney, and *Mr. James M. Proctor,* Assistant, for the United States.

Mr. Justice Robb delivered the opinion of the Court:

We will first consider the question whether the trial court was possessed with jurisdiction over the case when it entered the orders forming the basis of this assignment of error. Under the great weight of authority, we think it clear that, at common law, power to suspend sentence after conviction was inherent in all superior courts of criminal jurisdiction. In *Com.* v. *Dowdican,* 115 Mass. 133, Chief Justice Gray, speaking for the court, said: "It has long been a common practice in this Commonwealth, after verdict of guilty in a criminal case, when the court is satisfied that, by reason of extenuating circumstances, *or of the pendency of a question of law in a like case before a higher court,* or other sufficient cause, public justice does not require an immediate sentence, to order, with the consent of the defendant and of the attorney for the Commonwealth, and upon such terms as the court in its discretion may impose; that the indictment be laid on file, and this practice has been recognized by statute. * * * Such an order is not equivalent to a final judgment, or to a *nolle prosequi* or discontinuance, by which the case is put out of court; but is a mere suspending of active proceedings in the case, which dispenses with the necessity of entering formal continuances upon the dockets, and leaves it within the power of the court at any time,

upon the motion of either party, to bring the case forward and
pass any lawful order of judgment therein." In *State* v. *Addy,*
43 N. J. L. 113, 39 Am. Rep. 547, the court observed that the
practice of. suspending sentence in criminal cases had long been
in vogue in that as well as other States. In *People ex rel. For-
syth* v. *Court of Sessions,* 141 N. Y. 288, 23 L.R.A. 856, 36
N. E. 386, 15 Am. Crim. Rep. 675, the court said: "Without
attempting to collate all the authorities on the subject, it is suf-
ficient to say that the power to suspend sentence at common law
is asserted by writers of acknowledged authority on criminal
jurisprudence, by the uniform practice of the courts, and nu-
merous adjudged cases." In *State* v. *Crook,* 115 N. C. 760, 29
L.R.A. 260, 20 S. E. 513, it was observed that "such orders
are not prejudicial but favorable to defendants, in that punish-
ment is postponed with the possibility of escaping it altogether;
and it is presumed that the party adjudged guilty is present
and assenting to, if not asking for, such orders." See also
*Webster* v. *State,* 43 Ohio St. 696, 4 N. E. 92; *Fults* v. *State,*
2 Sneed, 232; *People* v. *Patrich,* 118 Cal. 332, 50 Pac. 425;
*People* v. *Walker,* 6 Cal. Unrep. 470, 61 Pac. 800; *People* v.
*Graves,* 31 Hun, 382; *Sylvester* v. *State,* 65 N. H. 193, 20
Atl. 954; *Weber* v. *State,* 58 Ohio St. 616, 41 L.R.A. 472,
51 N. E. 116; *Gibson* v. *State,* 68 Miss. 241, 8 So. 329; *Ex
parte Williams,* 26 Fla. 310, 8 So. 425; *People* v. *Reilly,* 53
Mich. 260, 18 N. E. 849. We think, however, that our deci-
sion upon this point in the present case may be rested upon the
rule of the court below, under which it is apparent the court's
action was taken. That rule specifically provides that each term
shall, as to any particular cause, be continued until the final
disposition of any motion seasonably filed therein. That the
motion of the government for sentence was seasonably filed is
admitted. That further action upon this motion was not con-
templated by either the defendant or the government until the
disposition of the appeal under the embezzlement indictment
in this court is equally uncontrovertible. Had the decision in
that case been adverse to the defendant, clearly the court would
have been clothed with jurisdiction to impose. sentence under

the book indictment. The continuance of the government's motion for sentence having been in conformity with the rule of the court, and having been acquiesced in by the defendant, he could not have challenged the court's jurisdiction to pronounce sentence upon him. Finding itself possessed with jurisdiction over the case, the court was not bound to pronounce sentence. Supposing, after the decision of this court, the defendant had moved the trial court to set aside the verdict under the book indictment. Could it for a moment be contended that that court would have been without jurisdiction to grant such a motion? Clearly not. Final action had not been taken upon the government's motion for sentence. When, therefore, that motion was overruled, the status of the case was exactly the same as it was upon the day that motion was made, and the court possessed full jurisdiction over it. The rule continues the term until the final disposition of any seasonably filed motion, and, during that time, the court has jurisdiction over the whole case. The formality of entering continuances upon the docket at each term is thus dispensed with. *Phillips* v. *Negley,* 117 U. S. 665, 29 L. ed. 1013, 6 Sup. Ct. Rep. 901, to which our attention has been directed by counsel, is not in point. That case deals with the power of a court over a *final judgment* entered at a prior term. Here, when action was taken, the cause was pending for judgment, or such other action as justice might require.

We do not deem it necessary to consider the question whether the court was possessed of authority, over the objection of the defendant, to set aside the verdict against him, and again place him upon trial. Assuming, *arguendo,* the court's lack of authority in the premises, it is clear, we think, that the only injury that could result to the defendant from such action of the court was the further trial of the case. By objecting to the rulings of the court leading up to the new trial, the defendant laid the foundation for a plea of former jeopardy in the event a retrial should be had. When, therefore, that trial was reached, it was open to him either to raise the question of former jeopardy, or to take his chances of a favorable verdict at

the hands of the jury. It is apparent that he chose the latter course, for there is not a suggestion in the record that, from the commencement of the trial to the rendering of the verdict of the jury, the question of former jeopardy was raised. The defendant did, as previously noted, claim twenty peremptory challenges instead of ten, because, as he contended, the two indictments charged offenses of a kind not proper to be included in and set forth in separate counts in the same indictment, but he at no time suggested or tendered an issue as to former jeopardy.

The reason why, in the absence of statutory provision to the contrary, the defense of former jeopardy must be made by special plea, and may not be interposed under the general issue, is plain. As was well said in *State* v. *Buzzell*, 58 N. H. 257, 42 Am. Rep. 586: "Former acquittal or former jeopardy, as a defense, is a plea of discharge or release that gives a reason why the defendant ought not to answer the indictment, and ought not to be put upon trial for the crime alleged. 4 Bl. Com. 335. The plea of not guilty raises the question, not whether, by former acquittal or jeopardy, he is discharged from a crime, but whether he committed it. When, as in this case, there is an opportunity to plead former judgment or jeopardy, and it is not pleaded, the case is as if there were no former judgment or jeopardy."

In *State* v. *White*, 71 Kan. 356, 80 Pac. 589, 6 Ann. Cas. 132, it was held that the immunity from second jeopardy guaranteed by the Constitution is a personal privilege which the accused may waive. That is, that it is a defense which must be seasonably interposed. The court said: "When about to be placed in jeopardy before a second jury, the accused may, if he so desire, take the chances of a favorable verdict."

In *State* v. *O'Connor*, 119 La. 464, 44 So. 265, it was held that the defense of former jeopardy must be specially pleaded, or verdict cannot be set aside by way of motion for a new trial or in arrest of judgment. The court observed that the constitutional guaranty against second jeopardy contemplates that whenever a crime shall have been committed, a trial shall be

had according to the methods prescribed by the legislative and judicial branches of the government, and that "when a method is provided which offers to the accused an opportunity to present his defenses, his failure to avail himself of such opportunity is his fault, and not that of the Constitution or those whose duty it is to enforce it."

In *United States* v. *Wilson,* 7 Pet. 150, 8 L. ed. 640, the precise question before the court was whether a pardon must be specially pleaded. The court, speaking through Chief Justice Marshall, in its statement of the case, said: "After the judgment no subsequent prosecution could be maintained for the same offense, or for any part of it, provided the former conviction was pleaded. Whether it could avail without being pleaded, or in any manner relied on by the prisoner, is substantially the same question with that presented in the second point, which is 'that the prisoner can, under this conviction, derive no advantage from the pardon without bringing the same judicially before the court, by plea, motion, or otherwise.'" The court held that where the benefit of a pardon is to be obtained through the agency of the court, it must be brought regularly to the notice of that tribunal; otherwise it will not be noticed therein. In other words, the defendant will be presumed to have waived it.

In the dissenting opinion of Mr. Justice Clifford in *Coleman* v. *Tennessee,* 97 U. S. 509, 525, 24 L. ed. 1118, 1125, he said: "Argument to show that the defense of a former conviction must be pleaded is quite unnecessary, as the rule at the present day is universally acknowledged; nor is it necessary to enter into much discussion to prove that it will not avail as a defense unless it is well pleaded, as that follows from the antecedent proposition, the rule being that the evidence is not admissible under the general issue." The opinion of the court in that case rested upon other grounds. See also *State* v. *Ackerman,* 64 N. J. L. 99, 45 Atl. 27; *State* v. *Houghton,* 45 Or. 110, 75 Pac. 887; *Mooring* v. *State,* 129 Ala. 66, 29 So. 664; *Daniels* v. *State,* 78 Ga. 98, 6 Am. St. Rep. 238; *Com.* v. *Chesley,* 107 Mass. 223; *People* v. *Bennett,* 114 Cal. 56, 45 Pac. 1013.

In the present case the defendant, having proceeded to trial, verdict, and judgment without objection, except as to the consolidation of the two indictments, and without raising the question of former jeopardy, must now be presumed to have waived any question arising out of the action of the court in awarding a new trial or as to former jeopardy; in other words, he is not in a position to urge those questions here.

Under the second assignment of error, the defendant again insists that he was entitled as of right to twenty instead of ten peremptory challenges. This question was fully considered in the last hearing of the case in this court, and a conclusion adverse to the defendant's contention reached. *Miller* v. *United States,* 38 App. D. C. 361, 370, 40 L.R.A.(N.S.) 973. Mr. Justice Van Orsdel, speaking for the court, and after reviewing the question fully, said: "We are here confronted, not by the joining of independent cases for trial under sec. 921, but by a 'true consolidation' of two indictments under sec. 1024, with a single defendant, upon charges which properly might have been embraced in separate counts in a single indictment. In this view of the law, it was not error to refuse to grant defendant the statutory number of peremptory challenges for each indictment." We find nothing in appellant's brief justifying a re-examination of this question.

It is next urged that the court erred in overruling the defendant's challenge for cause to a certain juror. During the examination of the panel of jurors upon *voir dire,* a talesman by the name of Henry Jorg stated that he did not know the defendant or any of his relatives, and that he had no knowledge of the case on trial "excepting the little bit he remembered from reading of it in the papers," and that he had no opinion as to the guilt or innocence of the defendant. He was then examined by counsel for the defendant, and, among other things, was asked whether what he had read about the case led him to form an opinion, and he replied that it did. After further questioning he was asked whether he did not still entertain that opinion, and replied, "Well, yes." After further questioning, counsel then asked, "And if you take your seat in the jury box, you

would still have that opinion?" The juror answered, "Sure." The court then questioned the juror and elicited the fact that he had served as a juror in other cases, and that he could dispossess himself of the opinion he had, and decide the case upon the evidence as offered by the witnesses. Thereupon counsel for the defendant again took the juror in hand, and, by a series of questions, the witness was lead to about the same conclusion that he had expressed under counsel's prior examination. The challenge for cause which had heretofore been interposed by the defendant was renewed.

The court thereupon again examined the juror as follows:

Q. Could you put aside that opinion when you take your seat in the box?

A. Yes, sir.

Q. Then, if you could, it would not require evidence to remove it, would it?

A. No, sir.

Mr. Laskey (counsel for defendant): The gentleman replies one way to your Honor, and another way to us.

The witness: It is a different way of putting the question.

The Court: Your questions are rather seductive, Mr. Laskey. The question is, after all, whether this opinion, which is formed fr.. reading newspapers,—an opinion which almost every man who reads newspapers forms,—whether that opinion is going to embarrass him in disposing of this case according to the testimony. I will ask him once more.

By the Court: Q. Would the opinion which you have formed from reading the newspapers have any bearing in your mind upon the final decision of the question involved in this case?

A. No, sir.

Q. Could you dispossess yourself of it?

A. Yes, sir.

Q. And decide this case upon the evidence introduced in court?

A. Yes, sir.

Whereupon the court overruled the defendant's challenge for

cause, to which ruling the defendant duly noted an exception.
It is perfectly apparent to us from the examination of this juror,
that he had formed no such opinion as to the guilt or innocence
of this defendant as to disqualify him to sit in the trial of the
case.  In common with all other intelligent men, men possessing
the primary qualifications of jurors, he had read the newspapers,
and that reading had left a somewhat vague impression upon
his mind; in other words, it was the same sort of impression that
naturally would lodge in the mind of any casual newspaper read-
er, and fell far short of an opinion upon the merits of the case.
Having in mind that the challenge of this juror was based sole-
ly upon the admission by him that he remembered the impres-
sion which the newspaper accounts had made upon him, his final
statement to the court that he could put aside that impression
when he took his seat in the jury box, that it would require no
evidence to remove it, and that it would have no bearing in his
mind upon his final decision of the questions involved in the
case, and giving effect to the rule that the discretion of the trial
court in the matter of the examination of jurors on their *voir
dire* will not be disturbed unless it is made clearly to appear
that, upon the evidence, there was no room for the exercise of
discretion by the court, we hold that the challenge was properly
overruled. *Howgate* v. *United States,* 7 App. D. C. 217; *Hor-
ton* v. *United States,* 15 App. D. C. 310; *Reynolds* v. *United
States,* 98 U. S. 145, 25 L. ed. 244; *Gallot* v. *United States,* 31
C. C. A. 44, 58 U. S. App. 243, 87 Fed. 446.

In the fourth assignment of error, the defendant contends
that no sentence could properly be based upon the book indict-
ment, first, because the statute upon which it is founded is void
and of no effect, and, second, because the indictment lacks aver-
ments essential to constitute an offense.  The statute, sec. 840
of the Code [31 Stat. at L. 1326, chap. 854], reads as follows:
"Taking Away or Concealing Writings.—Whoever, with intent
to defraud or injure another person, shall take away or conceal
any writing whereby the estate or right of such other person
shall or may be defeated, injured, or altered, shall suffer im-
prisonment for not more than seven years."  It is urged that,

because the words, "whereby the estate or right of such other person shall or may be defeated," etc., are not separated from the preceding words by punctuation, they qualify the word "writing," and that, if they do, the statute is so ambiguous as to be incapable of being understood. The answer to this contention is simple. The time has long since passed when the failure of the legislature to dot an i, cross a t, or insert a comma, will be permitted by courts of justice to excuse a violation of the offense which persons of ordinary intelligence would readily understand the statute was intended to reach. *United States* v. *Cella,* 37 App. D. C. 423, and cases there cited. By inserting a comma after the word "writing," no possible objection can possibly be made to the phraseology of this statute; and this we may do. *United States* v. *Lacher,* 134 U. S. 624, 33 L. ed. 1080, 10 Sup. Ct. Rep. 625; *Crawford* v. *Burke,* 195 U. S. 176, 49 L. ed. 147, 25 Sup. Ct. Rep. 9. Its meaning is so plain that no one can fail to understand it. We therefore forbear further discussion of this part of the assignment. As to the contention that the indictment is lacking in averments essential to constitute an offense under this statute, little need be said, since the question is not discussed in the brief, sole reliance being had upon the reasons set out in the motion in arrest of judgment. The indictment clearly sets forth the defendant's relation to the building association; that certain books of record were required to be kept, and that six carefully described books of record were kept; and that the defendant, on a day named, "unlawfully, wilfully, and with an intent to defraud and injure the said association, and the said stockholders and members thereof, did take away and conceal the said books hereinbefore in this indictment particularly described, said books then and there being the writing, records, and property of the said association and its said stockholders and members." These averments were sufficient.

The fifth assignment of error relates to the action of the court in permitting to be read to the jury the transcript of the testimony given at the preceding trial of the case by a witness who died before the last trial. This assignment is disposed of by the

case of *Mattox* v. *United States,* 156 U. S. 237, 39 L. ed. 409, 15 Sup. Ct. Rep. 337, where it was ruled that the properly verified copy of the reporter's stenographic notes of the testimony of a witness at a former trial of the case, who was fully examined and cross-examined, and who died after the first trial and before the second, was properly admitted in evidence against the accused on the second trial.

It is next urged that the court erred in admitting evidence concerning two transactions which, it is stated and admitted by the government, originally formed the basis of two counts of the embezzlement indictment, and on which the defendant was acquitted at the first trial. The record shows that this evidence was admitted by the court solely as tending to establish the intent which actuated the defendant in the transactions involved in the book indictment, that is to say, as tending to show a motive for the taking away and concealing of the books as charged in that indictment. The defendant was not there charged with embezzling the funds shown to have come into his hands through those two transactions, but nevertheless he may have been personally liable in a civil action because of those transactions. This evidence, therefore, had a direct bearing upon the question of intent under the book indictment, and was properly received.

It is next urged that there was no evidence in the case tending to show that the defendant concealed or destroyed any records or books of the association, and hence that the defendant's prayer that the jury be directed to find a verdict of not guilty should have been granted. The government's evidence tended to show that the records which the defendant was charged with taking were all deposited in the safe of the association of which the defendant was secretary-treasurer, and that the defendant alone had knowledge of the combination. Other evidence was introduced tending to show motive on his part for destroying those records, exclusive opportunity, and, finally, their actual disappearance under circumstances pointing to the guilt of the defendant. Clearly it was for the jury, and not the court, to say, under this evidence, whether the defendant was guilty.

It is further contended on behalf of the defendant that the modification by the court of the. defendant's sixth prayer constituted error.    In the first part of that prayer, which the court granted, the jury were instructed that, even though they should find that the defendant, as secretary-treasurer of the building association named in the indictment, received the money, or any part thereof, in either of the counts before the jury, they should not find him guilty of conversion of the same to his own use, or embezzlement thereof, unless they further found from the evidence that he in fact converted the same to his own use, or fraudulently made way with it, or secreted the same with intent so to convert it.    The court refused to grant the following: "And from the mere fact that he received the same, and the absence of any explanation of the use to which the same was applied by him, you may not find that he converted the same to his use, or secreted the same, *and, accordingly, cannot find him guilty of the embezzlement thereof.*"    An examination of the rejected part of the prayer discloses that it is based upon the assumption that there was no evidence tending to show conversion other than the mere fact of the receipt of the money by the defendant and his failure to explain what he did with it.    In other words, it entirely leaves out of view all other facts or circumstances in evidence.    The court did charge the jury, however, that they must find, first, the existence of the building association; second, that the defendant was an officer, agent, and employee of the association; third, that he received certain moneys as such officer, which belonged to the association; and, fourth, that while he was in possession of such funds, he wrongfully converted them to his own use.

The last assignment of error is based upon the defendant's contention below that, if the jury should find that he had formed the intention of converting the funds of the association before or at the time of the receipt of such funds, and had converted the same pursuant to such intention, he was guilty of larceny, and not embezzlement.    This question was fully considered by us in *Rhode* v. *United States,* 34 App. D. C. 249, and *Woodward* v. *United States,* 38 App. D. C. 323.    In this case, as in

those, the money was not obtained by the defendant through any trick or device, but, on the contrary, was regularly intrusted to him in his capacity as secretary-treasurer; that is, in his capacity as the lawful agent in charge of the association's business. When, therefore, he wrongfully converted this money to his own use, or fraudulently made way with it, or secreted it with intent to convert it to his own use, he was guilty of embezzlement, within the meaning of sec. 834 of the Code [31 Stat. at L. 1325, chap. 854]. This view is fully sustained by the reasoning in the two cases above cited.

Finding no error in the record, the judgments are affirmed.

*Affirmed.*

On December 12, 1913, the Supreme Court of the United States denied the application for a writ of certiorari.