## UNITED STATES v. CERTAIN LAND IN FALLS TP., BUCKS COUNTY, PA.

District Court, E. D. Pennsylvania. February 4, 1930.

No. 5860.

Calvin S. Boyer, U. S. Atty., of Philadelphia, Pa., for plaintiff.

Frank A. Harrigan, of Philadelphia, Pa., for defendant.

DICKINSON, District Judge. The situation presented by this motion is an unusual one. The fact basis of the complaint made is that possession of the lands of the petitioners was taken from them by the strong military arm of the government, backed by the power of eminent domain; that the only justification for the taking was that the lands were needed for military use; that the lawful exercise of the power of eminent domain is limited to the purposes of this use, so that the title acquired thereby ends with such use, but, notwithstanding this, the United States asserts a fee-simple title to the lands taken, and, as the United States had no lawful power to acquire the lands when the decree was entered, and as the military use has long since ended, the title to the land should be put back in the former owners by the vacation of the decree of condemnation.

Incidentally, and as disclosing the milk supply in the cocoanut, the United States has found a purchaser for the property at the price of $1,620,000, which is over five times the condemnation price. It is a fair assumption that a condemnation price is always about three times the price which could otherwise be obtained, and, as these lands were farm lands in Bucks county, any such price as the suggested one (unless fifteen-sixteenths of it reflects the value of improvements made after condemnation) illustrates the Aladdin lamp powers wielded by realtor magicians. As long as human nature is what it is, no one would blame the owners of land for resenting the act of the United States in taking lands from them by force in order to resell them at a profit of nearly a million and a half dollars. It is much easier to find an excuse for the owners for wishing to get back their lands than it is to devise a way in which to get them back. Their ingenious counsel resorts to the present motion as the first step in the process of accomplishing this desired result. Even assuming that the owners should be reinstated in title, the procedural difficulties would seem to be insurmountable.

The first proposition is that, as the lands in question are in Pennsylvania and the underlying question one of title, the law of the case in this broad aspect of it is the law of Pennsylvania. There is no doubt that the law of Pennsylvania is that the title taken through condemnation proceedings is not a fee simple but a base fee, or, in other words, that the right acquired is not one to the ownership of the land in the sense in which a tenant in fee simple owns his lands, but it is merely a right to the possession and use of the lands for the purpose of the use for which taken, and that whenever the use ceases the title to the lands reverts to those called the former owners. This law is very favorable to those whose lands are taken by the power of eminent domain, for the practical effect of it is that they are paid the value of a fee-simple title when their lands are condemned and yet get them back again if and when the use for which they were condemned ends.

In the latter case, the former owner can recover possession of his lands by and through an action in ejectment. Such action, however, is his appropriate remedy, and he would surely have no right to have the decree of condemnation vacated or set aside because the right he is asserting is based not upon the condemnation, and logically has no bearing upon it but upon something which has since happened, and which gives him the right to recover his lands, notwithstanding the condemnation proceedings. The point made is that, if the now asserted title were based upon the principle of law stated, it might (if nothing more appeared) be asserted in an action of ejectment, but it would by no means follow that the present motion should be allowed.

It may be remarked in passing that much more than condemnation (or an attempt at it) does appear. When one taking lands

through the power of eminent domain in Pennsylvania wishes to enlarge his title from that of a base fee to a fee simple, he does so, and can only do so, by taking a conveyance of the land in the usual form. Under such a conveyance, he has title to the land whether the condemnation use is abandoned or not, and such a conveyance would be a good defense by the grantee to any action of ejectment which the grantor might bring. Here there was such conveyance.

The discontinuance of the condemnation use, however, is not the real basis for the present motion, as the experienced counsel is well aware of the futility of the motion, if so based. The real ground of the motion is the averred legal nullity of the condemnation proceeding and of the decree asked to be stricken from the record because the court was without jurisdiction to entertain the proceedings or at least to make the decree. This averment of nullity is based at least chiefly (although on other grounds also) on the Act of Congress of July 11, 1919, c. 8, 41 Stat. 104, 128 and its supplements (Acts Aug. 12, 1919, c. 44, 41 Stat. 278 and Feb. 28, 1920, c. 90, § 2, 41 Stat. 453). This act is averred to render it unlawful for the United States for war purposes to acquire these lands and to take from the court jurisdiction to entertain the condemnation proceedings, or at least to enter the decree of condemnation when it was entered. We have thus qualified the statement because the act was not passed until after the proceeding had been begun, although it had been passed before the proceedings had been concluded and the decree made.

It may be said in explanation of what was done that it is evident that the action of the court was purely perfunctory, because the proceedings were uncontested, and, as the act of Congress referred to was an appropriation act, the provision referred to was overlooked by all the counsel concerned.

Without inquiring into the act of Congress or its effect upon the condemnation proceeding or whether the decree was a nullity, we assume arguendo all in these respects which is averred because, if upon this assumption the motion should not be allowed, the question of whether the decree is void or merely voidable or valid is of no aid to the discussion.

■■ That under some circumstances a void judgment which was a nullity in law when entered may or should be stricken off notwithstanding the term has ended may be admitted upon the authority of the cases cited. United

States v. Wallace (D. C.) 46 F. 569; Thomas v. American Freehold Land & Mortgage Co. (C. C.) 47 F. 556, 12 L. R. A. 681; Brown v. Allebach (C. C.) 182 F. 264. And also that the present motion is the appropriate method of reaching this result. Phillips v. Negley, 117 U. S. 665, 6 S. Ct. 901, 29 L. Ed. 1013.

■ The question remains, however, whether the court should take this action under the facts of this case. We state, without further discussion, some of the reasons for refusing to so do:

(1) The decree entered was a consent decree, and, although it is doubtless true that consent could not confer jurisdiction upon the court, the decree was coupled with the voluntary act of the owners of the land in making the conveyances which were made, and hence the only reason for striking it off is its averred nullity. As its legal nullity is assumed, the decree is nothing, and we are asked to strike off nothing. Unless there is some other reason for action, mere nullity is not enough.

(2) On the faith of this decree, the owners of the land received in the aggregate the sum of $300,000, and there is no return, or offer of return, of this money.

(3) It is admitted that third parties have paid the sum of $1,662,000 for a title which is evidenced in part by this decree. Such subsequent purchasers clearly have an interest in the questions raised, and yet we are asked to allow the present motion which may affect this interest and is averred by the movers to vitally affect it without notice to them or giving to them their day in court.

■ (4) As the former owners made a conveyance of the property, the title, such as it may be, does not rest upon a decree which is void and a consequent nullity, but upon the conveyance, and hence there is no reason to interfere in the condemnation proceeding or with what was done therein until this deed of conveyance is first avoided.

■ (5) The decree asked to be stricken off was entered June 9, 1921, in a condemnation proceeding begun January 7, 1919, and we are now asked in 1930 to allow this motion. These dates afford ample ground for a finding of laches, and no explanation of the delay is forthcoming.

■ (6) The very competent counsel supporting the present motion appreciates the great and many obstacles in the path to the fulfillment of the hopes of his clients, but he takes refuge in the statement that a be-

ginning must be made, and that his present motion is merely for the allowance of a rule to show cause. Ordinarily such a rule is allowed as of course, but here we are dealing with a title, and even the allowance of a rule to show cause might put a practical blur upon it. When the motion was made, we accordingly refused to allow it, but gave leave to file the motion, with notice to the United States attorney so that the question of the propriety of its allowance might be discussed.

The motion is denied.