## EX PARTE GORDON.

1. A writ of prohibition will not be issued to a District Court of the United States sitting in admiralty, wherein a libel claiming damages was filed against a steamer for drowning certain seamen of a vessel with which, as she was navigating the public waters of the United States, the steamer, as was alleged, wrongfully collided.

2. That court, having jurisdiction of the steamer and of the collision which is the subject-matter of the suit, is competent to decide whether, under the circumstances, it may estimate the damages which one person has sustained by the killing of another.

PETITION for a writ of prohibition.

The facts are sufficiently stated in the opinion of the court.

*Mr. Arthur George Brown* and *Mr. Stewart Brown* for the petitioner.

*Mr. John H. Thomas, contra.*

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

This is an application by the owner of the British steamer "Leversons" for a writ of prohibition to restrain the District Court of the United States for the District of Maryland, sitting in admiralty, from proceeding further in a cause begun in that court against his vessel to recover damages for the drowning of certain persons in consequence of a collision on the Chesapeake Bay between the steamer and the schooner "David E. Wolf," caused by the fault of the steamer.

Sect. 688 of the Revised Statutes gives this court authority to " issue writs of prohibition to the District Courts when proceeding in admiralty." The writ thus provided for is a common-law writ, which lies to a court of admiralty only when that court is acting in excess of, or is taking cognizance of matters not arising within, its jurisdiction. 6 Bac. Abr. 587, tit. Prohibition, K. Its office is to prevent an unlawful assumption of jurisdiction.

The judicial power of the United States extends to " all cases of admiralty and maritime jurisdiction" (Const., art. 3, sect. 2) ; and Congress, by sect. 563, subd. 8, of the Revised Statutes, committed the exercise of this power in most cases primarily to the District Courts. Admiralty jurisdiction extends to maritime contracts and service, and to torts or injuries of a civil nature, committed on navigable waters. *The Belfast,* 7 Wall. 624. The District Courts have the power to hear and decide all cases arising under this jurisdiction, and when a prohibition is applied for, the question presented is not whether a libellant can recover in the suit he has begun, but whether he can go into a court of admiralty to have his rights determined.

The collision which caused the injury now complained of was certainly a subject of admiralty jurisdiction. It occurred between two vessels while navigating the public waters of the United States, and was a maritime tort. For damages to the

vessels or their cargoes, caused by the collision, a suit could unquestionably be maintained in the District Court of any district where the vessel should be found. . The question in the present suit is whether the vessel is liable to the libellants for pecuniary damages resulting from a loss of life in the collision, and that, as we think, a court of admiralty may properly decide. The suit is for damages growing out of the collision. Having jurisdiction in respect to the collision, it would seem necessarily to follow that the court had jurisdiction to hear and decide what liability the vessel had incurred thereby. Suppose the courts of common law had never decided that an action could not be maintained at common law for damages caused by the death of a human being, would any one doubt the power of courts of admiralty to determine whether such an action could be brought in that jurisdiction? It is no doubt true that down to within a comparatively recent period the courts of admiralty, both in England and in this country, have followed the rule of the common law in respect to such actions, and have decided that damages for such wrongs were not recoverable; but since Lord Campbell's Act in 1846 (9 & 10 Vict., c. 93), it has been provided by statute in England, and in most of the States of the Union, that suits may be brought in the courts of common law for the benefit of those having a pecuniary interest in the life of one who has been killed by the wrongful act of another, to recover such damages as they may have sustained in consequence of the wrong that has been done; and we think it is clearly within the power of the courts of admiralty to determine whether this legislation has not wrought a corresponding change in the laws which govern their jurisdiction.

We have not overlooked the fact that in *Smith* v. *Brown* (Law Rep. 6 Q. B. 729), decided in 1871, the Court of Queen's Bench in England, evidently with some hesitation, restrained the Court of Admiralty from proceeding with such a suit; but in *The Franconia* (2 P. D. 163), decided in 1877, Sir Robert Phillimore declined to follow that case, and his action was sustained in the Court of Appeal by a divided court. The English Court of Admiralty has asserted its jurisdiction in *The Guldfaxe*, Law Rep. 2 Ad. & Ec. 325, *The Explorer*, id. 289,

and *The Franconia, supra.* We think this. case is a proper one for the application of the rule followed by the Court of Queen's Bench in *The Charkieh* (8 Q. B. 197), where the suggestion on an application for a prohibition was, that, in a case of collision between the "·Charkieh " and the " Batavier," the Court of Admiralty had no jurisdiction, because the " Charkieh" was the property of the Khedive of Egypt, and was a ship of the Egyptian branch of the Turkish navy, carrying the· Ottoman naval pennant; but Lord Chief Justice Cockburn, who participated in the decision of *Smith* v. *Brown,* said, after stating the claims that were made, " There, therefore, is a further question, whether or not a vessel belonging to a foreign potentate, but not used as a vessel of state or a vessel of war, is entitled to the immunity which ships of war, and ships used for the purposes of government, enjoy. · This is a question peculiarly within the province of the Court of Admiralty to decide. Why are we to find that the Court of Admiralty cannot deal with it? If it entertains the suit, there is an appeal to the Judicial Committee of the Privy Council, a court of the highest authority. I feel disinclined to grant a rule for a prohibition in a case where the facts are in doubt, and the court whose jurisdiction is sought to be impeached is just as competent to determine the question as we are. . . . But both facts and the law are within the jurisdiction of the Court of Admiralty, and that court is perfectly competent to decide them." And Blackburn, J.: " It does seem to me that the Court of Admiralty has jurisdiction to determine the facts, and to decide whether international and maritime laws do allow the circumstances stated to be a defence to a claim against the "Charkieh;" and if that court be wrong, the Privy Council can set it right, and their decision would be final. I do not see how it can be said that the Court of Admiralty is exceeding its jurisdiction in entertaining the suit as a question of international law; and, taking that view of it, I think the court ought not to be prohibited." All the judges concurred in refusing the writ. ·

So here, the Court of Admiralty has jurisdiction of the vessel and the subject-matter of the action, to wit, the collision. It is competent to try the facts, and, as we think, to determine

whether, since the common-law courts in England, and to large extent in the United States, are permitted to estima the damages which a particular person has sustained by the wrongful killing of another, the courts of admiralty may not do the same thing. If the District Court entertains such a suit, an appeal lies from its decree to the Circuit Court, and from there here, if the value of the matter in dispute is sufficient. Under these circumstances, it seems to us clear that the admiralty courts are competent to determine al' the questions involved, and that we ought not to issue the prohibition asked for.

*Petition denied.*