## In re DENNETT.

**(Circuit Court of Appeals, Ninth Circuit. May 21, 1914.)**

### No. 2417.

**1. MANDAMUS (§ 4*)—REMEDY BY APPEAL—DECISIONS REVIEWABLE.**

After the close of the term at which they were entered, all final judgments or decrees pass beyond the control of the court, unless steps have been taken during the term, by motion or otherwise, to modify or correct them; and the action of the court in assuming to modify or set aside a judgment or decree on a motion made after the term is without jurisdiction, and reviewable by writ of error or appeal.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 9–21, 24–34, Dec. Dig. § 4.*]

**2. MANDAMUS (§ 157*)—SCOPE OF REMEDY—FEDERAL COURTS.**

A petition for a writ of mandamus to a District Court, and the judge thereof, to review the action of the court in attempting to modify a prior decree on a motion made after the term at which such decree was entered, *held* to raise questions of jurisdiction and practice, justifying the issuance of a rule to show cause, that they might be fully presented.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 317–323, 371; Dec. Dig. § 157.*]

At Law. Petition of John Dennett, Jr., and others, for a writ of mandamus to the District Court for the District of Arizona and the judge thereof. Rule to show cause directed.

John Dennett, Jr., and numerous others, have filed their petition in this court praying an order or rule directing the District Court of the United States for the District of Arizona, and the honorable judge thereof, to snow cause why a writ of mandamus should not issue out of this court, prohibiting the said District Court and the judge thereof from exercising any jurisdiction over a certain alleged final decree, bearing date February 27, 1913, and commanding said court and the judge thereof to annul and expunge from its records a certain other decree entered of date March 12, 1914.

It appears from the petition that one Charles W. Clark, about January 15, 1912, instituted a suit in said District Court against the Arizona Mutual Savings & Loan Association and the Arizona Trust Company, to be called herein respectively the Loan Association and the Trust Company, in his own behalf as a stockholder in the Loan Association, and in behalf of all other stockholders similarly situated. Clark is a citizen of California, and defendants are citizens of Arizona, and the amount involved is sufficient to give the court jurisdiction.

Prior to April, 1911, the Loan Association became and was insolvent, and the officers thereof, as alleged, organized the Trust Company, and thereafter unlawfully transferred to the Trust Company assets of the Loan Association of the approximate value of $130,000, and about 90 per cent. of the stockholders in the latter association exchanged their stock for stock in the Trust Company; the plaintiff Clark being one who refused to make an exchange of stock. The bill contains, among others, the following averments setting forth the unlawful transfer of the assets:

"That the defendant Trust Company, with full knowledge of all the facts herein set forth, and with full knowledge of the fact that in April, 1911, due to the insolvency of the defendant Loan Association, the officers and directors thereof became and were trustees for the benefit of your orator and other stockholders similarly situated, and that the assets and property of the said defendant Loan Association were thereupon and thereafter impressed and charged with the trust for the benefit of your said orator and other stockholders in said defendant Loan Association similarly situated, and notwith-

standing the fact that the said defendant Loan Association had no other debts or obligations than those which it owed to your orator and other stockholders therein similarly situated, the said defendant Trust Company, with full knowledge of all of the matters herein set forth, took over the said assets and property of the said defendant Loan Association."

And, further, that "all of the assets and property of the defendant Loan Association have been used by the defendant Trust Company in the exploitation of various speculative enterprises, in which said defendant Trust Company has engaged, and that in connection with said enterprises the assets of the defendant Loan Association have been used by the said defendant Trust Company and the officers thereof, and that the said assets have been used and have become mingled with certain other assets of the defendant Trust Company subsequently acquired by it, and that by reason thereof your orator and other stockholders in the said defendant Loan Association have acquired equities and rights in connection with said after-acquired property of the said defendant Trust Company, but that it is difficult now to separate and to segregate the assets which have at all times belonged to the said defendant Loan Association, and possession of which was acquired by the defendant Trust Company, as aforesaid, from such, if any, assets as have been acquired subsequently by the defendant Trust Company."

And it is eventually averred that the suit is instituted "to the end that the transactions herein set forth as heretofore made between the defendants above named be annulled and declared void and held for naught, and to the end that an accounting may be had between the two defendants above named, and between the defendant Loan Association and your orator and others similarly situated, and to the end that the property and assets of the defendant Loan Association, in which your orator and others similarly situated has and have respectively an interest, may be conserved and protected, and that a receiver of the defendant Loan Association may be forthwith appointed, with full powers to acquire and take possession of and to marshal the assets of the defendant Loan Association, in whosesoever hands the said assets and properties may be, and to ascertain the amounts due and owing from the said defendant Loan Association to your said orator and other stockholders thereof similarly situated, and that such sums of money, if any, as may be due and owing to the defendant Loan Association, be ascertained and determined, and that your orator and others similarly situated who may desire to intervene herein in support of this bill of complaint may be permitted to do so, and that your orator and such persons as may intervene, as aforesaid, may be awarded such other relief as to a court of equity may seem proper."

The prayer of the bill is for an annulment of the transactions had between the defendants and a restitution of the assets of the Loan Association by the Trust Company to the Association, for an accounting between the defendants, and between the Loan Association and the complainant and other stockholders similarly situated, for the appointment of a receiver with authority to reduce to possession all of the assets of the defendant Loan Association wheresoever found, for a winding up of the affairs of the Loan Association, and for such other and further relief in the premises as the nature and circumstances of the case may require.

Subsequently to the filing of the bill there were four petitions of intervention filed by persons who were original stockholders of the Loan Association, but many of whom had exchanged their stock for stock in the Trust Company. By the petitions it is shown that those who had exchanged their stock had been induced to do so through the fraudulent contrivance and misrepresentations made to them by the defendants in said cause.

The prayer of the interveners is that they be permitted to intervene, and as to the intervening stockholders in the Trust Company that the transactions whereby their stock in the Loan Association was exchanged for stock in the Trust Company be rescinded and set aside, and they be reinstated to their title in the stock of the Loan Association, and that the Trust Company be required to make restitution of the properties and assets to the Loan Association, and that a receiver be appointed to take over all the assets of both said defendants, that an accounting be had between the defendant companies.

as well as between such companies and their stockholders, that a master be appointed to take proofs, and that the affairs of both companies be wound up, and their assets marshaled and distributed to whomsoever may be entitled thereto, and for such other and different relief as to the court may seem proper.

The defendants jointly answered the bill, and, among other things, set out that certain plans were devised whereby preferred shares of the Trust Company stock might be exchanged at par for the stock of the Loan Association, and that, in pursuance of such plans, exchanges of stock have taken place to the extent that the Trust Company is now the owner of about 90 per cent. of the entire outstanding stock of the Loan Association, and as such owner of said stock is and has been the equitable owner of a like proportion of all the assets of the Loan Association.

A reply having been filed, trial was had, and on February 27, 1913, the court made and entered its decree, whereby it was adjudged and decreed:

First. That certain interveners, naming them, were still stockholders in the Trust Association.

Second. That certain other interveners were stockholders in the Trust Company, who had exchanged Loan Association stock for such holdings.

Third. That about March, 1911, those in control of the Loan Association, the Association being at the time insolvent, caused the Trust Company to be organized, for the purpose of taking over the assets of the Association and engaging in business.

Fourth. That as to the interveners who had never exchanged their stock the said proposed transfer of assets was unlawful and invalid.

Fifth. That pursuant to the purpose of the Trust Company's organization all of the assets and properties of the Loan Association were transferred to the former company, since which time said company and its officers had so dealt with such assets and properties of the Loan Association as that they have become confused and inseparably commingled with the assets and properties of the Trust Company; and that at this time it is impracticable and impossible, in justice to the parties to the litigation, to direct and enforce a retransfer of all the original properties and assets so secured by the Trust Company and profits therein from the Loan Association.

Sixth. That the interveners known as "exchanging stockholders" were induced through fraud and deceit to exchange their stock, and it was decreed that they be permitted to rescind the agreements whereby such exchanges were made.

"Seventh. And to the end that the rights of all of the interveners herein and of the outstanding stockholders in the defendant Loan Association who never exchanged their stock therein for stock in the defendant Trust Company may be adequately preserved and protected, the Court hereby confirms the sale and transfer of all of the assets of the defendant Loan Association to the defendant Trust Company, and adjudges that complete title is vested in the defendant Trust Company of, in, and to all of the assets and properties of whatsoever kind or nature heretofore owned by the defendant Loan Association, subject only to the lien and charges hereinafter specified.

"Eighth. And for the further protection of the rights of the said interveners and the said stockholders in the defendant Loan Association who never exchanged their stock therein for stock in the defendant Trust Company, the court adjudges and determines that all of the assets and properties now or hereafter owned or acquired by the defendant Trust Company be, and they hereby are, impressed with the trust and lien in favor of each of the said interveners named herein to the extent and amount set opposite the names of each, and in favor of the stockholders in the defendant Loan Association who never exchanged their stock therein for stock in the Trust Company for the amounts heretofore paid in by such last-named persons in the following names and amounts."

Ninth. That the account of Christy, as receiver of the Loan Association, be approved, and he be discharged.

Tenth. That Sims Ely, Esq., be appointed permanent receiver of the Loan Association and the Trust Company; that he sell so much of the whole of

the assets and properties of the defendant Trust Company as may be necessary, first, to pay and discharge the costs of administration of the Loan Association estate; second, the costs and expenses incident to the administration of the Trust Company's estate; and that thereafter he pay pro rata and in equal shares to each and all the interveners herein and to the stockholders of the Loan Association named in the preceding eighth paragraph of this decree such sums of money as may be received by such permanent receiver until the said interveners and the said nonexchanging Loan Association stockholders named in the preceding eighth paragraph are paid in full the amounts set opposite their respective names; and that the receiver pay the balance remaining, if any, in his hands to the defendant Trust Company for the benefit of such persons as may be lawfully entitled thereto.

The eleventh and twelfth paragraphs deal with the title of the receiver and injunction against disposing of the property of the defendant companies.

The term of court expired of its own limitations April 5, 1913. On that day, but after the adjournment of the court for the term, J. L. Warring and others filed a motion to intervene and an intervening petition in said cause. The motion was not continued over the term or called to the attention of the court until April 14, 1913, when a demurrer was sustained to the petition. Thereafter, on or about July 15, 1913, J. L. Warring and others filed another motion in court, and a petition praying that they be permitted to intervene, to the end that the decree of February 27, 1913, be set aside, and for such other and further relief as to the court might seem appropriate.

The petition for intervention sets forth the filing of the original bill, the decree of February 27, 1913; that the petitioners, except one, are stockholders of the Trust Company; that they adopt the allegations of the bill in so far as applicable; that each of them were formerly owners of stock in the Loan Association, and through fraudulent representations of the defendants were induced to exchange such stock for stock in the Trust Company; that petitioners had no knowledge of the appointment of receivers of either of the defendant companies until some time in February, 1913; and that they had no notice of the pendency of the suit which resulted in said final decree; that the decree is inaccurate, in that the names of several of the stockholders are duplicated in some instances, and larger amounts are decreed than the amounts paid in by the said stockholders; and that both defendant companies are insolvent and unable to pay their just debts and obligations. Other allegations are made attacking the action of the receiver, but they are not material to the present controversy. The prayer of the intervening petitioners is that they be permitted to intervene; that the decree of February 27, 1913, be set aside; that the transaction whereby the petitioners exchanged their Loan Association stock for Trust Company stock be declared fraudulent and void, and that petitioners be reinstated in their former holdings; that an accounting be had; and for general relief.

Thereafter, on March 12, 1914, the court allowed the intervention and modified the decree of February 27, 1913, in that it was decreed that the Trust Company restore to the Loan Association all properties and assets of the latter; that the Trust Company deliver to the receiver all properties of every kind and nature that it received from the Loan Association; and that the cause be referred to the standing master for report touching certain specified conditions.

William M. Seabury, of Phœnix, Ariz., for petitioners.

Before GILBERT and ROSS, Circuit Judges, and WOLVERTON, District Judge.

PER CURIAM. [1] It is a rule of law long established that after the term has ended all final judgments and decrees of the court pass beyond its control, unless steps have been taken during the term by motion or otherwise to modify or correct them. Bronson v. Schulten,

104 U. S. 410, 415, 26 L. Ed. 797; Sibbald v. United States, 12 Pet. 487, 491, 9 L. Ed. 1167.

A court, in assuming to modify, annul, or set aside a judgment or decree after the term in which it is rendered, is in general parlance considered to have exceeded its jurisdiction. Such excess of jurisdiction is, no doubt, the subject of review by writ of error or appeal. In a case of that kind, it was said by the Supreme Court:

"If, on the other hand, the order made was without jurisdiction on the part of the court making it, then it is a proceeding which must be the subject of review by an appellate court." Phillips v. Negley, 117 U. S. 665, 671, 672, 6 Sup. Ct. 901, 903 (29 L. Ed. 1013).

As a general rule mandamus will not lie where there exists an adequate legal remedy; that is, if the legal remedy is as specific, prompt, and competent to afford relief upon the very subject of controversy as mandamus. Under federal practice the writ may be employed in aid of appellate jurisdiction, and the Circuit Court of Appeals is authorized to invoke its assistance in appropriate cases. The writ so employed extends to jurisdiction which might otherwise be defeated by the unauthorized action of the lower court, as well as to jurisdiction actually acquired. McClellan v. Carland, 217 U. S. 268, 279, 280, 30 Sup. Ct. 501, 54 L. Ed. 762.

Or, putting it in another way, the test of jurisdiction in aid of which the appellate court may issue writs of mandamus is not the actual prior exercise of the right by appeal or writ of error, but the existence of the right to review by a challenge to the final decisions or otherwise of the cases or proceeding to which the applications for the writ relate. Barber Asphalt Pav. Co. v. Morris, 132 Fed. 945, 66 C. C. A. 55, 67 L. R. A. 761.

Mandamus will issue, therefore, by appellate jurisdiction to annul the acts of an inferior court, where such inferior court has acted wholly without its jurisdiction. Such a case is Ex parte Bradley, 7 Wall. 364, 377 (19 L. Ed. 214), the court saying:

"The ground of our decision upon this branch of the case is that the court below had no jurisdiction to disbar the relator for a contempt committed before another court. * * * No amount of judicial discretion * * * can supply a defect or want of jurisdiction in the case. The subject-matter is not before it; the proceeding is coram non judice and void."

The principle has been applied in cases where the inferior federal courts have assumed jurisdiction of removal causes, and acted beyond their power and judicial authority in so doing. Virginia v. Rives, 100 U. S. 313, 25 L. Ed. 667; Virginia v. Paul, 148 U. S. 107, 13 Sup. Ct. 536, 37 L. Ed. 386; In re Winn, 213 U. S. 458, 29 Sup. Ct. 515, 53 L. Ed. 873. In the first of those cases the court says of the writ:

"Its use has been very much extended in modern times, and now it may be said to be an established remedy to oblige inferior courts and magistrates to do that justice which they are in duty, and by virtue of their office, bound to do. It does not lie to control judicial discretion, except when that discretion has been abused; but it is a remedy when the case is outside of the exercise of this discretion, and outside the jurisdiction of the court or officer to which or to whom the writ is addressed. One of its peculiar and more common uses is to restrain inferior courts and to keep them within their lawful bounds."

In the last case cited the same principle is invoked, the court being careful at the same time to state the limitations governing the issuance of the writ in the following language:

"Mandamus, it is true, never lies where the party praying for it has another adequate remedy. The writ of mandamus was introduced to supplement the existing jurisdiction of the courts and to afford relief in extraordinary cases where the law presents no adequate remedy. * * * In these cases writs of mandamus must not be permitted to usurp the functions of writs of error or appeals, or to take their place where they offer an adequate remedy to the aggrieved party. It is only in cases where the record makes it clear, as a matter of law, that the Circuit Court was without jurisdiction to take any action whatever, that the writ of mandamus lies."

In Ex parte Harding, 219 U. S. 363, 31 Sup. Ct. 324, 55 L. Ed. 252, 37 L. R. A. (N. S.) 392, the doctrine as applied in this case (The Winn Case), and other similar cases, was limited in its proper application to causes where the record presents a total absence of jurisdiction involving no element of discretion. In that case the court goes into an elaborate and comprehensive review of the cases, such as Ex parte Hoard, 105 U. S. 578, 26 L. Ed. 1176, apparently holding a contrary view to the Winn Case, and other like cases, and criticises and limits in some respects the expressions of the court touching the province and application of the writ of mandamus, but still holds that all of the latter line of cases were rightly decided, upon the principle of a total absence of jurisdiction and involving no element of discretion.

In another removal cause (In re Metropolitan Trust Co., 218 U. S. 321, 31 Sup. Ct. 20, 54 L. Ed. 1051), decided shortly prior to Ex parte Harding, but not mentioned in that case, in its review of the seemingly conflicting holdings of the court on the subject, the court awarded mandamus as an appropriate remedy. And the particular feature which seems to render it pertinent here is that the court exercised its authority to set aside a judgment rendered upon demurrer, after the term at which it was rendered, upon the erroneous idea that it was without jurisdiction in the first instance to sustain the removal, a motion having been interposed to remand. In its disposition of the case the court, speaking through Justice Hughes, says:

"Nor could the court exercise the general power which it possesses to modify or set aside its orders or decrees prior to the expiration of the term at which the final decree is entered; for in this case that term had ended before the motion was made"

—citing cases, and among them Ex parte Sibbald and Bronson v. Schulten, supra, and concludes:

"When the motion was made, the court was without jurisdiction to vacate the decree. As the court, in granting the motion, exceeded its power, mandamus is the appropriate remedy."

There are two aspects upon which the court may have predicated lack of jurisdiction in the Circuit Court: First, in its want of power to act at all, the matter being within its discretion in the first instance whether to retain or remand the cause; and, second, in its want of authority to annul a judgment or decree after the term in which it was rendered. The court having taken the pains, however, to state the rule, in the course of the disposal of the case, which limits the power

of the court to set aside its own decree to the term in which it was rendered, we assume that by so emphasizing the doctrine it based its decision largely, if not wholly, upon the lack of power in the Circuit Court after the term had ended, and hence held that in such a case mandamus was the proper remedy. The holding must have been so made, notwithstanding the rule announced in Phillips v. Negley, supra, that such a judgment was subject to review on appeal or writ of error.

[2] Based upon this case and the previous authorities cited, and the discussions as to when the remedy by mandamus in aid of appellate jurisdiction is available, we are impressed that where a court has attempted, subsequent to the term at which a judgment or decree is rendered, to set aside or annul such judgment or decree, it presents a case where the court has acted wholly without jurisdiction or power in the premises, and its act in that respect is void, and that mandamus will lie to correct the error. But as this is one of the controlling questions in the case, and the cause having been presented ex parte, we withhold our final judgment touching it until opposing counsel can be heard on a rule to show cause.

The District Court was of the view that the decree of February 27, 1913, was entered without jurisdiction, because outside of and beyond the issues made in the pleadings in the original cause. Of this we express no opinion; neither do we indicate any opinion as to whether the cause was still in the breast of the court when the order or decree of March 12, 1914, was rendered.

Upon the showing made, however, we are of the view that the order to show cause should be issued as prayed. All parties can then be heard, and the matter fully presented.