### MUIR v. CHATFIELD, District Judge.

(Circuit Court of Appeals, Second Circuit. December 7, 1918.)

COURTS ☞404—CIRCUIT COURTS OF APPEALS—ISSUANCE OF REMEDIAL WRITS.

The power of federal courts to issue writs is statutory, and under Judicial Code, § 262 (Comp. St. § 1239), a Circuit Court of Appeals has power to issue a writ of prohibition or mandamus only when necessary for the exercise of its appellate jurisdiction.

Petition for Writ of Mandamus to the District Court of the United States for the Eastern District of New York.

In the matter of the petition of James Thomson Muir, master of the British Admiralty transport Gleneden, for writs of prohibition and mandamus against Thomas I. Chatfield, United States District Judge for the Eastern District of New York. Petition denied.

Kirlin, Woolsey & Hickox, of New York City (John M. Woolsey, of New York City, and D. M. Tibbetts, of Guthrie, Okl., of counsel), for petitioner.

Butler, Wycoff & Campbell, of New York City (Walter C. Noyes, Homer L. Loomis, and Joseph A. Barrett, all of New York City, of counsel), for respondent.

Frederic R. Coudert and Howard Thayer Kingsbury, both of New York City, amici curiæ, for British Embassy.

Before WARD, HOUGH, and MANTON, Circuit Judges.

WARD, Circuit Judge. This is an original proceeding in this court for a writ of prohibition and a writ of mandamus against the Honorable Thomas Ives Chatfield, Judge of the United States District Court for the Eastern District of New York, on the ground that he has wrongfully refused to release from arrest in a proceeding in rem for collision the British Admiralty transport Gleneden in a libel there pending. We quote from the brief on behalf of the British Embassy in support of the petition, as follows:

"An admiralty suit in rem was brought in the Eastern District of New York by an Italian corporation, owning the Giuseppe Verdi, against the Gleneden, to

recover damages for a collision which occurred in the Mediterranean, and the Gleneden was arrested therein. The Gleneden is a British vessel, belonging to a, private owner, but requisitioned by the British government, and in its service as an Admiralty transport. She is loaded with a cargo of grain belonging to the British government and is under Admiralty orders to sail forthwith. Under instructions from the British Embassy, its counsel intervened in the admiralty suit by leave of court as amici curiæ and presented a suggestion that the Gleneden was immune from judicial process as a vessel in the public service of the British government, and should be released from arrest and permitted to perform her government service without further interference.

"Judge Chatfield, to whom the suggestion was presented, handed down an opinion in which he said that 'the court will not retain possession unless that possession can be acquired without interfering with the rights of the British government,' but nevertheless required, as a condition of turning the vessel over to the representatives of the British government, that a bond be given by the private owner, although the private owner had not become a party to the cause and was not before the court. As recited in the order, a representative of the firm of Kirlin, Woolsey & Hickox, who had appeared as proctors for the owner of the Gleneden in an admiralty suit in another district, was physically present in court pursuant to an 'order of court' to that effect, but there was no warrant in law for this extraordinary procedure, nor could it be effective to confer jurisdiction in personam.

"Judge Chatfield's order was thus without jurisdiction in two aspects: It was an interference with an instrumentality of a cobelligerent foreign government, and an attempt thereby to bring pressure to bear upon a party not before the court to compel the giving of security. Nevertheless, the order could not be ignored without the possibility of an unseemly conflict with the actual custody of the marshal over the vessel, incompatible with the courtesy due from the British government to the officer of a court of the United States.

"Counsel for the Embassy, being in the case as amici curiæ only, could take no further steps by way of appeal. It is not deemed desirable that the Embassy should come into court as a party, or intervene except for the purpose of informing the court of official facts of which the court may take judicial notice, and upon which it may then act in conformity with settled principles of international law and comity. If a bond were given by the owner as required by Judge Chatfield's order, the question of immunity would become academic, since the vessel would be no longer under restraint.

"The only recourse available was an application to a court exercising appellate jurisdiction over the District Court, to prevent it from attempting to exercise a jurisdiction which it does not possess over the instrumentality of a foreign government. Such an application has accordingly been made by the master of the Gleneden, as the bailee of the vessel, and upon such application counsel for the British Embassy ask leave again to intervene as amici curiæ, and suggest the immunity of the vessel."

We will not inquire whether the order of Judge Chatfield was right or wrong, because we are without power to grant the prayer of the petition in an original proceeding. The power of the federal courts to issue writs is statutory. Section 234 of the Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1156 [Comp. St. § 1211]), formerly section 688, U. S. Rev. Stat., confers power upon the Supreme Court as follows:

"The Supreme Court shall have power to issue writs of prohibition to the district courts, when proceeding as courts of admiralty and maritime jurisdiction; and writs of mandamus, in cases warranted by the principles and usages of law, to any courts appointed under the authority of the United States, or to persons holding office under the authority of the United States, where a state, or an ambassador, or other public minister, or a consul, or vice consul is a party."

This section confers original jurisdiction in the two specific instances mentioned; i. e., the Supreme Court may issue writs of prohibition to the District Courts when they are proceeding as courts of admiralty and writs of mandamus to any federal court when a state or an ambassador or other public minister or a consul or a vice consul is a party. This power is without reference to appellate jurisdiction.

The power of the Supreme Court is briefly and clearly discussed by Chief Justice Fuller in Re Commonwealth of Massachusetts, 197 U. S. 482, 25 Sup. Ct. 512, 49 L. Ed. 845. See, also, Virginia v. Rives, 100 U. S. 313, 25 L. Ed. 667.

Note that in the cases of Ex parte Easton, 95 U. S. 68, 24 L. Ed. 373, Ex parte Gordon, 104 U. S. 515, 26 L. Ed. 814, Ex parte Ferry Co., 104 U. S. 519, 26 L. Ed. 815, Ex parte Hagar, 104 U. S. 520, 26 L. Ed. 816, and Ex parte Pennsylvania, 109 U. S. 175, 3 Sup. Ct. 84, 27 L. Ed. 894, the writs of prohibition were denied, not because the Supreme Court had no appellate jurisdiction (it being then limited to $2,000, exclusive of costs [U. S. Rev. Stat. §§ 691, 692]), but because the District Court had not acted without, or had not exceeded, its jurisdiction.

The power to issue writs in other cases is conferred by section 262 of the Judicial Code, formerly section 716, U. S. Rev. Stat., which is as follows:

"Sec. 262. The Supreme Court and the District Courts shall have power to issue writs of scire facias. The Supreme Court, the Circuit Courts of Appeals, and the District Courts shall have power to issue all writs not specifically provided for by statute, which may be necessary for the exercise of their respective jurisdictions, and agreeable to the usages and principles of law." Comp. St. § 1239.

The subject was originally regulated by section 14, c. 20, Laws of 1789, 1 Stat. 81, which so far as relevant reads:

"Sec. 14. And be it further enacted, that all the before-mentioned courts of the United States, shall have power to issue writs of scire facias, habeas corpus, and all other writs not specially provided for by statute, which may be necessary for the exercise of their respective jurisdictions, and agreeable to the principles and usages of law."

But the first sentence of section 262 covers one complete proposition, and is not connected with the second, as was the case in the act of 1789. It gives original jurisdiction to the Supreme Court and District Courts to issue writs of scire facias, which is an original writ and civil action. Winder v. Caldwell, 14 How. 434, 14 L. Ed. 487; United States v. Payne, 147 U. S. 687, 13 Sup. Ct. 442, 37 L. Ed. 332; Hollister v. United States, 145 Fed. at 779, 76 C. C. A. 337. The remainder of the section clearly confers power upon the Supreme Court and Circuit Courts of Appeals to issue writs when necessary to their appellate jurisdiction. The jurisdiction of the Circuit Court of Appeals, unlike that of the Supreme Court, is solely appellate. In most of the decided cases writs of mandamus and prohibition were necessary to the appellate jurisdiction after jurisdiction had been acquired by writ of error or appeal. But they may be necessary to the jurisdiction of the court before that, as, for instance, where the lower

court refuses to proceed with a cause pending there, and so may deprive the Circuit Court of Appeals of its appellate jurisdiction, or is proceeding contrary to its mandate, and so interfering with its jurisdiction. The following cases, relied upon by counsel, granting the writ, are of this nature: Our own decision, In re Watts, 214 Fed. 80, 130 C. C. A. 520; Barber Asphalt Pav. Co. v. Morris (8 Cir.) 132 Fed. 947, 66 C. C. A. 55, 67 L. R. A. 761; In re Beckwith (7 Cir.) 203 Fed. 45, 121 C. C. A. 381; In re Dennett (9 Cir.) 215 Fed. 673, 131 C. C. A. 607.

The Supreme Court in McClellan v. Carland, 217 U. S. 268, 30 Sup. Ct. 501, 54 L. Ed. 762, directed the Circuit Court of Appeals to issue a writ of mandamus to the District Judge to compel him to try a cause pending before him which he was staying in order to give the state of South Dakota an opportunity to try out the same question first in a state court; and in United States v. Mayer, 235 U. S. 55, 35 Sup. Ct. 16, 59 L. Ed. 129, the Supreme Court held that the Circuit Court of Appeals had power to issue a writ of prohibition restraining the District Judge from granting a new trial after a writ of error had been taken to the Circuit Court of Appeals. We regard ourselves as without power to grant the prayer of the petition because there has been no appeal from Judge Chatfield's order, and because that order, whether right or wrong, does not interfere in any way with the jurisdiction of this court. He has refused to discharge the vessel, except upon the owner's giving a bond, so that the jurisdiction of the District Court is maintained, and the appellate jurisdiction of this court is in no manner interfered with.

The cause being obviously one of great importance, we have decided it practically upon the hearing, so that no time may be lost to the parties interested in taking any other course they may be advised.

Reference to analogous legislation in respect to the writ of habeas corpus confirms the foregoing views. Section 751, U. S. Rev. Stat. (Comp. St. § 1279), confers the right to issue the writ ad subjiciendum upon the Supreme Court and the District Courts. But the Circuit Court of Appeals, having only appellate jurisdiction, is without power to grant the writ in this form (Whitney v. Dick, 202 U. S. 132, 26 Sup. Ct. 584, 50 L. Ed. 963), though it may in other forms, as ad testificandum or ad respondendum, necessary to the exercise of its appellate jurisdiction.

The petition is denied.